**In the Interest of J.G., a Minor.**

**Appeal of J.G., Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 2004.

Filed Oct. 1, 2004.

Suzanne M. Swan, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before: BENDER, KELLY, and JOHNSON, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, J.G., appeals from the dispositional order entered in the Allegheny County Court of Common Pleas, following his delinquency adjudication for possession with intent to deliver heroin[1] ("PWID") and possession of heroin.[2] The issue presented on appeal is whether the trial court should have suppressed evidence obtained from an investigatory stop and search of Appellant. We hold the police did not establish a reasonable suspicion of criminal activity to justify an investigatory stop and search of Appellant, where the only evidence of criminal wrongdoing was Appellant's presence in a high crime area combined with his decision to "walk away" from the police officers upon seeing their approach. Therefore, we vacate the dispositional order, reverse the denial of the suppression motion, and remand for a new adjudication hearing.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On August 20, 2003, Officer James Madison, a Pittsburgh Housing Authority Officer, was part of a team working a drug suppression assignment in southern Pittsburgh. The team consisted of Officer Madison and another officer in an unmarked vehicle, followed by a police wagon containing uniformed officers. Officer Madison testified he first noticed Appellant standing in front of a building located in a "high drug area." According to Officer Madison, Appellant saw the unmarked vehicle and started to walk away. Officer Madison alighted from the vehicle and approached Appellant. He inquired if Appellant resided in the public housing area. Appellant mumbled something and when Officer Madison repeated the question, he replied "no". At that point, Officer Madison patted down Appellant, finding an identification card ("I.D.") that did not resemble Appellant and a falcon key that belonged to public housing. Again, Officer Madison asked Appellant if he lived in public housing, and Appellant responded he did not. Appellant also stated he did not know to whom the I.D. belonged.

¶ 3 Officer Madison presented the key to Officer Lane, who exited his vehicle to help Officer Madison. Officer Lane proceeded to a nearby public housing complex and knocked on the doors of several units. Officer Lane eventually knocked at Apartment 545, and when no one answered, he put the key in the door and opened it. In the apartment, Officer Lane observed a clear plastic bag containing eighty (80) stamped bags of what was later identified as heroin in plain view on the living room table. Officer Lane retrieved the bag and gave it to Officer Madison. The police also found on the living room table an I.D. matching the I.D. confiscated from Appellant.[3] Neither the owner of the apartment nor the person on the I.D. were charged with any crime.

¶ 4 On August 21, 2003, Appellant was charged in a delinquency petition with PWID and possession of heroin. At an October 30, 2003 hearing, Appellant motioned to suppress the evidence on the basis of an illegal search and seizure. The court denied the motion, and continued the adjudication hearing until December 4,

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

3. Both I.D. belonged to an individual residing in another town.

2003. On that date, the court adjudicated Appellant delinquent on the aforementioned charges. This appeal followed.

¶ 5 Appellant raises the following issues for our review:

> DID THE [TRIAL] COURT ERR IN DENYING THE MOTION TO SUPPRESS ON THE GROUNDS THAT ABSOLUTELY NO SPECIFIC AND ARTICULABLE FACTS EXISTED WHICH GAVE RISE TO REASONABLE SUSPICION THAT JUVENILE WAS ENGAGED IN CRIMINAL ACTIVITY AND THAT HE WAS ARMED AND DANGEROUS AT THE TIME THE POLICE CONDUCTED THE STOP AND PATDOWN SEARCH?
>
> WAS THIS ISSUE ADEQUATELY PRESERVED BELOW, AND IF NOT, WAS APPELLATE COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS IN THE CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL?

(Appellant's Brief at 4).

¶ 6 Appellant asserts the police did not have reasonable suspicion that a crime was afoot when they subjected him to an investigatory stop. Appellant argues he should not have been searched because there was no evidence he was armed or presented any danger to the officers. Appellant contends the officers' sole justification for stopping him was his presence in a high crime area. Thus, Appellant concludes the trial court should have granted his suppression motion. We note the Commonwealth agrees with Appellant's position. We also agree.

¶ 7 In reviewing a suppression order:

> Our scope of review is limited primarily to questions of law. We are bound by the suppression court's findings of fact, if those findings are supported by the record. In determining whether the findings of fact are supported by the record, we are to consider only the evidence of the appellee and so much of the evidence of the Commonwealth which, as a whole, remains uncontradicted. It is for the suppression court as trier of fact to determine credibility. We are not bound by findings wholly lacking in evidence. Nor are we bound by the suppression court's conclusions of law.

*Commonwealth v. Roland,* 701 A.2d 1360, 1361 (Pa.Super.1997) (quoting *Commonwealth v. Rodriquez,* 385 Pa.Super. 1, 559 A.2d 947, 948 (1989)).

¶ 8 In determining whether an officer may "stop and frisk" a citizen within the boundaries of the Fourth Amendment, the court must apply the rules set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). *Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153 (2000).

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in

evidence against the person from whom they were taken.

*Terry, supra* at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911. Further, a frisk for weapons is justified only if a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. In determining an officer's reasonableness, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* Police officers may find reasonable suspicion to suspect criminal activity is afoot where an unprovoked citizen flees upon noticing the police. *In the Interest of D.M.*, 566 Pa. 445, 450, 781 A.2d 1161, 1164 (2001); *Commonwealth v. Jefferson*, 853 A.2d 404 (Pa.Super.2004). "Flight [is] clearly relevant in determining whether the police demonstrated reasonable suspicion to justify a *Terry* stop under the totality of the circumstances." *In the Interest of D.M., supra* at 452, 781 A.2d at 1165.

¶ 9 Instantly, we agree with Appellant that the officers did not articulate any reasonable basis to suspect he was engaged in criminal activity on the morning of August 20, 2003. Furthermore, there was no evidence Appellant was armed or otherwise posed a danger to the officers or anyone else. To the extent the officers relied on Appellant's presence in a "high drug area" to initiate their *Terry* stop and search, we note Appellant, upon seeing the police approaching in their vehicles, did not immediately run away or turn into headlong flight, but merely "started to walk away." (N.T. Adjudication Hearing, 10/30/03, at 5). Thus, the facts of this case are distinguishable from *In the Interest of D.M., supra* and *Jefferson, supra*. For these reasons, we conclude the officers had no grounds to perform an investigatory *Terry* stop and search on Appellant, and the trial court erred when it denied Appellant's suppression motion. *See Terry, supra; Roland, supra*. The court should have suppressed all evidence seized as a result of the improper search and seizure, including the drugs eventually found in a nearby public housing complex.[4]

¶ 10 For the foregoing reasons, we hold Appellant's presence in a high crime area, coupled with his decision to walk away from approaching police officers, does not, absent more, provide reasonable suspicion of criminal activity to justify an investigatory stop and search. Accordingly, we vacate the dispositional order, reverse the denial of the suppression motion, and remand for a new adjudication hearing.[5]

¶ 11 Dispositional order vacated; order denying suppression motion reversed, case remanded. Jurisdiction is relinquished.

---

4. We note the Allegheny County District Attorney's Office has fulfilled its responsibility for the administration of justice by identifying the erroneous suppression ruling in this matter. We compliment the Allegheny County D.A.'s office for their unbiased review of this, and other, criminal matters.

5. Due to our disposition of Appellant's first issue, we need not address his second issue.