J-A19041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTONIO GRAY, | : | |
| | : | |
| Appellant | : | No. 2668 EDA 2016 |

Appeal from the Judgment of Sentence April 29, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  MC-51-CR-0004803-2016

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 21, 2017**

Antonio Gray ("Gray") appeals from the judgment of sentence entered in the Philadelphia Municipal Court, as confirmed by the Philadelphia Court of Common Pleas following the denial of his Petition for writ of *certiorari*.[1]  We vacate the Order of the common pleas court, reverse Gray's judgment of sentence, and discharge Gray.

---

[1] An appellant convicted in the municipal court has two appellate options:

> Pennsylvania Rule of Criminal Procedure 1006(1)(a) provides that a defendant convicted in Philadelphia Municipal Court has the right to request either a trial *de novo* or file a petition for a writ of *certiorari* with the Philadelphia Court of Common Pleas. This Court has held that when a defendant files a petition for a writ of *certiorari*, the Philadelphia Court of Common Pleas sits as an appellate court.

***Commonwealth v. Coleman***, 19 A.3d 1111, 1118-19 (Pa. Super. 2011) (citations omitted).  A petition for writ of *certiorari* asks the common pleas court to review the record made in the municipal court.  ***Commonwealth v. Williams***, 125 A.3d 425, 431 (Pa. Super. 2015).

During the suppression hearing, the municipal court set forth, on the record, its findings of fact as follows:

> The events bring[ing] us here today occurred [on] February 18, 2015[, at] 8:15 [p.m.,] on the 5500 block of North 5th [Street] in Philadelphia. It's there [that Philadelphia Police] Officer [Victor] Rodriguez [("Officer Rodriguez")] and his partner were [in] full uniform, [in a] marked patrol vehicle. [The officers] observed [Gray] standing on the street. They went back around the block. [Gray] was still standing there. And then after [the officers] saw [Gray] look in the direction of their vehicle, they saw him start to walk away. And Officer Rodriguez described in detail [that] at the time that [Gray] was walking away, Officer Rodriguez … saw a black object in [Gray's] right hand, and he explained [that] he believed that could possibly be a firearm.
>
> [Officer Rodriguez] stopped [Gray]. [Gray] complied. [Officer Rodriguez] asked [Gray] if he had a weapon. [Gray] is alleged to say, ["]All I have is crack, I'm a user.["] Based on that, Officer Rodriguez placed [Gray] under arrest, and [a] search incident to arrest [revealed] the black pouch[,] which contained alleged crack.

N.T. (Suppression), 4/29/16, at 15-16.[2]

Gray was charged with possession of a controlled substance and possession with intent to deliver a controlled substance.[3] Gray litigated a

---

[2] The municipal court additionally asked the prosecutor and Gray's counsel whether they wanted to suggest any additions or modifications to its findings of fact, to which both replied in the negative. *See* N.T. (Suppression), 4/29/16, at 16.

[3] The Commonwealth subsequently withdrew the charge of possession with intent to deliver a controlled substance.

Motion to suppress in the municipal court,[4] asserting that the recovered cocaine and his statement to Officer Rodriguez was the result of a stop that was unsupported by reasonable suspicion or probable cause. The municipal court denied Gray's Motion to suppress, and the case immediately proceeded to a stipulated bench trial in the municipal court. Gray was convicted of possession of a controlled substance, after which the municipal court sentenced him to one year of reporting probation.

On May 20, 2016, Gray filed a Petition for writ of *certiorari* in the common pleas court, challenging the denial of his Motion to suppress. Following a hearing, the common pleas court denied Gray's Petition for writ of *certiorari*. Gray subsequently filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Gray raises the following issue for our review: "Did not the [common pleas] court err in denying the [M]otion to suppress the statement and narcotics taken from [] Gray, where he was stopped without reasonable suspicion that criminal activity was afoot[,] and the evidence subsequently recovered should have been suppressed as the fruits of the illegal stop?" Brief for Appellant at 3.

---

[4] Philadelphia Rule of Criminal Procedure 630 allows a defendant or his attorney to make an application to suppress evidence in the municipal court, either in writing prior to trial, or orally at the time of trial. Phila. Co. Crim. Div. R. 630(A), (B).

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

Gray asserts that the municipal court erred in denying his Motion to suppress the cocaine, and his statement to Officer Rodriguez, because the stop was not supported by reasonable suspicion. Brief for Appellant at 8. Gray claims that the objective facts possessed by Officer Rodriguez at the time of the stop (*i.e.*, his observation of Gray standing on the same corner for several minutes, Gray's movement away from the corner, and Gray's placement of a black object in his pocket) did not give rise to reasonable suspicion of criminal activity. *Id.* at 9-10. Additionally, Gray asserts that despite the fact that there had been recent robberies in the area, the record is silent regarding whether weapons had been used in the robberies, whether Gray matched the description of any suspect, or whether any robbery suspects had been apprehended. *Id.* at 10. Gray contends that Officer Rodriguez "did not describe what he saw in [Gray's] hand from twenty feet away[,]" and never testified that the object looked like a gun.

*Id.* Gray also claims that the municipal court did not make a factual finding that Gray intentionally turned his body in an attempt to conceal the object. *Id.*

There are three categories of interactions between police and a citizen evaluated pursuant to Article I, Section 8 of the Pennsylvania Constitution:

> The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

Here, the municipal court determined that Gray was subjected to an investigative detention.[5] *See* N.T. (Suppression), 4/29/16, at 16, 17, 19. When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the

---

[5] In its brief, the Commonwealth argues that the interaction between Gray and Officer Rodriguez was a mere encounter, rather than an investigative detention. *See* Commonwealth's Brief at 5-8. However, the Commonwealth did not argue during the suppression hearing that the interaction was a mere encounter. Additionally, during the suppression hearing, the municipal court asked the prosecutor and Gray's counsel whether they agreed that "in order to stop [Gray] for investigation, we're talking about reasonable suspicion, not probable cause[,]" and the Commonwealth replied in the affirmative. N.T. (Suppression), 4/29/16, at 17; *see also id.* at 18, 20 (wherein the Commonwealth provided argument regarding the factors weighing in favor of a finding of reasonable suspicion).

United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot.

> In deciding whether reasonable suspicion exists for an investigatory detention, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight.

*Commonwealth v. Gray*, 784 A.2d 137, 141-42 (Pa. Super. 2001) (citations and paragraph break omitted).

During the suppression hearing, Officer Rodriguez testified that on February 18, 2016, at approximately 8:15 p.m., he was on duty in the area of 5500 North 5th Street in Philadelphia. *See* N.T. (Suppression), 4/29/16, at 8. According to Officer Rodriguez, he and his partner were in a marked patrol vehicle, in full uniform, and it was dark at that time. *See id.* at 13. Officer Rodriguez stated that he was in the area because several robberies had occurred within the preceding few days. *See id.* at 10.

Officer Rodriguez testified that, while he was driving southbound on 5th Street, he observed Gray standing on the corner, and "he wasn't doing anything." *See id.* at 9. Officer Rodriguez testified that when he circled the block a few minutes later, Gray was still at the same corner. *See id.*

According to Officer Rodriguez, Gray then walked eastbound on Tabor Road, away from 5th Street, before turning around and ultimately walking north on 5th Street. *See id.* Officer Rodriguez testified that he noticed a black object in Gray's right hand. *See id.* at 9, 11. Officer Rodriguez also testified that, from his position about 20 feet away from Gray, he observed Gray put the item in his pocket. *See id.* at 9, 15.

At that time, Officer Rodriguez "stopped [Gray] for investigation." *Id.* at 9; *see also id.* at 10 (wherein Officer Rodriguez testified that he was investigating Gray for possibly carrying a firearm). According to Officer Rodriguez, he believed the black object could be a firearm because Gray was walking away from the corner when he placed the object in his pocket, and Gray had turned away from Officer Rodriguez's view. *See id.* at 10.

Following the suppression hearing, the municipal court determined that the detention was supported by reasonable suspicion. *See* N.T. (Suppression), 4/29/16, at 19-20; *see also id.* at 17-19 (wherein the municipal court considered the factors weighing in favor of reasonable suspicion). The municipal court determined that the following factors weigh in favor of reasonable suspicion: flight, although not headlong flight; Officer Rodriguez's observation of a black object in Gray's hand, and his belief that the object could be a gun; and recent robberies in the area (though the court noted that this was not a substantial factor). *See id.* at 17-19. Upon

review, we conclude that the totality of the circumstances fail to substantiate a reasonable suspicion that Gray was engaging in criminal activity.

When Officer Rodriguez first observed Gray, he was merely standing on the street corner, and by Officer Rodriguez's own admission, Gray "wasn't doing anything." *See id.* at 9. Despite a recent history of burglaries in the surrounding blocks, Gray's presence in that area, without more, does not establish his involvement in criminal activity. *See In re D.M.*, 781 A.2d 1161, 1163 (Pa. Super. 2001) (noting that mere presence in a high crime area alone is insufficient to establish reasonable suspicion). The evidence presented at the suppression hearing also established that Gray *walked* away from the corner, rather than running or fleeing. *See Commonwealth v. Key*, 789 A.2d 282, 290 (Pa. Super. 2001) (stating that "[a]n individual's act of merely walking away from police officers in a 'high crime area' is manifestly insufficient to justify an investigative detention of that individual."); *see also In re J.G.*, 860 A.2d 185, 189 (Pa. Super. 2004) (concluding that juvenile's presence in a "high drug area," and his decision to walk away from police as they approached in their vehicles, rather than running away or turning into headlong flight, did not provide reasonable suspicion to justify an investigatory stop). Moreover, despite being only about 20 feet away from Gray at the time, Officer Rodriguez did not testify that the unidentified object looked like a firearm. Rather, Officer Rodriguez's belief was based on the fact that Gray walked away from the corner and

turned around, out of Officer Rodriguez's view. *See Commonwealth v. Martinez*, 588 A.2d 513, 516-17 (Pa. Super. 1991) (concluding that stop was not supported by reasonable suspicion where defendant was seen on a street corner after midnight; she walked away after looking in the direction of the unmarked police vehicle; and her jacket appeared to have a "bulge" in it). Additionally, there was no evidence presented at the suppression hearing to suggest that Officer Rodriguez had reason to believe that Gray was otherwise engaged in illegal activity. *See* N.T. (Suppression), 4/29/16, at 21 (wherein the municipal court stated that "[t]he officer didn't have anything. … There's nothing else to suggest [Gray was] armed and dangerous[.]"). Based upon the foregoing, we conclude that Gray was subjected to an illegal detention, without the requisite reasonable suspicion.

Further, because Gray did not make the incriminating statement until *after* he was illegally detained (and he would not have made the statement independent of being stopped by Officer Rodriguez), the statement is a product of the initial illegality. *See Commonwealth v. Wood*, 833 A.2d 740, 746 (Pa. Super. 2003) (*en banc*) (concluding that the defendant's incriminating statement, which was made only after she had been detained without reasonable suspicion, was illegally obtained). Accordingly, the municipal court erred in failing to suppress Gray's statement, as well as the narcotics obtained during the subsequent search, as fruits of the illegal stop. We therefore reverse the Order of the common pleas court denying Gray's

Petition for writ of *certiorari*, reverse Gray's judgment of sentence, and discharge Gray.[6]

Order vacated. Judgment of sentence reversed. Gray discharged.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017

---

[6] Without Gray's statement and the narcotics seized by Officer Rodriguez during the stop, there is no evidence supporting Gray's convictions.