**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TYRONE HOLLOWAY | No. 1530 EDA 2016 |

Appeal from the Order April 15, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006776-2015

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:               **FILED MAY 03, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals the order entered April 15, 2016, granting the motion to suppress filed by Appellee, Tyrone Holloway.  We affirm.

The suppression court discussed the facts of this case as follows:

On April 1, 2015, at approximately 10:27 p.m., uniformed police officers Kamedula and Barrie arrived in a marked police vehicle at the Blumberg Housing Projects on the 2300 block of Bolton Street in Philadelphia.  The officers then received a radio call that men and women were in front of 2300 Bolton Street fighting and a firearm was present.  A 9-1-1 call came in that provided additional information: "a large crowd of people fighting, and one person was armed with a firearm."  The 9-1-1 caller also stated there were males and females dressed in all black Muslim attire.  The caller, however, noted that he could not see their faces.

Upon arrival at the location, the police officers observed Appellee and another man entering a red Dodge Durango.  Officer Kamedula testified that "after looking in our direction, they

entered the vehicle and turned the vehicle on." The other people in the area were "further up walking towards the high rise building." Officer Kamedula immediately approached Appellee's vehicle and opened the door. Appellee exited the vehicle, swatted the officer's hand and began to run away. Officer Kamedula observed Appellee throwing a black pistol shaped object to the ground. Following the apprehension of Appellee, Officer Kamedula searched him and recovered drugs.

A second set of police officers arrived at the scene shortly thereafter. Officer James Mooney testified that he found the firearm in the vicinity where Officer Kamedula witnessed Appellee throwing the pistol shaped object. Appellee was approximately fifty (50) yards away when the firearm was recovered.

**See** Suppression Court Opinion (SCO), 2/7/17, at 2 (citations to the record omitted).

Appellee was arrested and charged with persons not to possess firearms, firearms not to be carried without a license, intent to possess a controlled substance, and carrying firearms in public in Philadelphia.[1] Prior to trial, Appellee filed a suppression motion.

At the suppression hearing, following the testimony of Officers Kamedula, Barrie, and Mooney, as well as Appellee's testimony in his own defense, the court granted Appellee's motion to suppress, finding that officers had no reasonable suspicion at the time of the stop. **See** SCO at 3. The Commonwealth filed a motion for reconsideration, which was denied. The

---

[1] **See** 18 Pa.C.S. § 6105(a)(1), 18 Pa.C.S. § 6106(a)(1), 35 P.S. § 780-113(a)(16), and 18 Pa.C.S. § 6108, respectively.

Commonwealth timely filed this interlocutory appeal. [2] The Commonwealth filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the suppression court issued a responsive opinion.

On appeal, Appellant raises a single issue for our review:

Did the lower court err in suppressing the recovered gun and illegal drugs found on [Appellee's] person where police officers, arriving at a high crime area in response to a call of a person with a gun, saw [Appellee], fitting the description, look in their direction; flee into a parked vehicle; strike one of the officers when told to exit the vehicle; flee on foot; and discard a gun?

Appellant's Brief at 1.

The Commonwealth argues that the court erred in granting Appellee's motion to suppress. *See* Appellant's Brief at 6. The Commonwealth contends that police were within their authority to approach Appellee when they first saw him, arguing that reasonable suspicion was unnecessary. *Id.* at 6-7. Further, the Commonwealth contends that notwithstanding the court's characterization of Appellee "walking" towards the car, Appellee was actually attempting to "withdraw in order to avoid the police," or flee, which provided officers with reasonable suspicion to stop. *Id.* at 8.

When the Commonwealth appeals from a suppression order:

---

[2] In its notice of appeal, the Commonwealth certified that the trial court's order denying its motion to admit evidence of prior bad acts pursuant to Pa.R.E. 404(b) terminates or substantially handicaps the prosecution. *See* Pa.R.A.P. 311(d) (permitting interlocutory appeal where Commonwealth certifies with its notice of appeal that order terminates or substantially handicaps prosecution). Thus, the appeal is properly before us. *See* **Commonwealth v. Ivy**, 146 A.3d 241, 244 n.2 (Pa. Super. 2016).

we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 56 A.3d 1276, 1278–79 (Pa. Super. 2012).

We note, initially, that

[t]here are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

*In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. 2016).

Here, our analysis hinges on the level of suspicion required at the moment of the stop, i.e., whether it constituted a mere encounter or an investigative detention. Our Court has previously observed that

[t]o determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1201–1202 (Pa. Super. 2002) (citations omitted).

Here, a reasonable person would have concluded that he was not free to leave. Appellee had gotten into the passenger seat of the car, and Appellee's companion had turned the car on. *See* Notes of Testimony (N.T.), 4/15/16, at 20, 140. Officers Kamedula and Barrie approached the car from both sides, and Officer Kamedula ordered Appellee to put his hands in the air and step out of the car. *Id.* at 20-22, 140. Officer Kamedula then opened the car door, effectively preventing the men from driving away. *Id.* Because a reasonable person would not have felt free to terminate this encounter, it constituted an investigatory detention and, accordingly, required reasonable suspicion. *See Reppert*, 814 A.2d at 1201-02.

Thus, we must determine whether the officers had reasonable suspicion to stop Appellee's car in the first instance. *See Commonwealth v. Zhahir*, 751 A.2d 1153, 1156 (Pa. 2000) (citing *Terry v. Ohio*, 88 S. Ct. 1868, 1879 (1968)) (noting that the justification of a 'stop and frisk' must be justified at its inception and be reasonably related in scope to the circumstances justifying the interference in the first place). It is true that evasive and suspicious behavior in a high crime area, unprovoked flight, and training and experience, *may* provide the requisite reasonable suspicion. *See Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa. Super. 2017) (emphasis added). However, mere presence in the vicinity of a recently reported crime does not justify a stop. *See Commonwealth v. Jackson*, 519 A.2d 427, 432-33 (Pa. Super.

1986). Further, merely walking away from police officers on their approach in a high crime area does not, without more, provide officers with reasonable suspicion to justify an investigatory stop and search. ***See In re J.G.***, 860 A.2d 185, 189 (Pa. Super. 2004).

Here, the suppression court concluded that Officer Kamedula did not have reasonable suspicion to stop Appellee. Particularly, the court noted that the 911 call did not contain any flash information or description of the combatants but only stated that males and females were fighting in front of the housing project and one of them was armed. ***See*** N.T. at 139. The combatants were dressed in all black, and their faces were concealed. ***Id.*** There was no description of a car, red Dodge Durango or otherwise, involved in the fight. ***Id.*** Thus, there was no description linking the crime to Appellee. Further, although the Commonwealth now attempts to characterize Appellee's initial movements toward the car as "fleeing" or "evading," as the suppression court correctly notes, Officer Kamedula's own testimony establishes that Appellee "walked" towards the car. ***Id.*** at 140; ***see also*** SCO at 4. Although Officer Kamedula opined that Appellee got into the vehicle to leave the scene, that is of no moment.

As the suppression court observed,

> It is not suspicious or illegal behavior to look in the direction of police officers. Nor does [Appellee's] mere presence in the vicinity of a recently reported crime justify a stop. Further, walking away from the police does not rise to reasonable suspicion. The behavior and actions specified above do not rise to reasonable suspicion of criminal activity afoot. Officer Kamedula had no legal

- 6 -

basis, as clearly articulated by his own testimony, to stop [Appellee], and thus any subsequent behavior and/or evidence should be suppressed as fruit of the poisonous tree.

**See** SCO at 4-5 (citations omitted).

We agree. Accordingly, for the reasons outlined above, the suppression court properly granted Appellee's motion and suppressed all physical evidence recovered from the scene. **See Miller**, 56 A.3d at 1278-79.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/18