J-A18006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BENJAMIN HAROLD RANDOLPH :
:
Appellant : No. 865 WDA 2019

Appeal from the Judgment of Sentence Entered May 9, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001469-2017

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 24, 2020**

Appellant, Benjamin Harold Randolph, appeals from the judgment of

sentence of 72 to 144 months' incarceration, imposed after he was convicted,

following a non-jury trial, of possession with intent to deliver a controlled

substance (PWID), 35 P.S. § 780-113(a)(30). Herein, Appellant solely

challenges the trial court's denial of his motion to suppress the evidence in

this case. After careful review, we affirm.

Briefly, Appellant was arrested after he fled from two Pennsylvania State

Troopers attempting to detain him, and discarded a bag later determined to

contain 103 grams of cocaine. Prior to trial, Appellant filed an *omnibus* pretrial

motion contending, *inter alia*, that the troopers lacked reasonable suspicion to

conduct the initial ***Terry***[1] stop and frisk that instigated Appellant's flight. A

---

[1] ***Terry v. Ohio***, 392 U.S. 1 (1968).

suppression hearing was conducted on March 9, 2018. There, Pennsylvania State Trooper Adam Kezmarsky testified that at approximately 10:00 p.m. on June 5, 2017, he and Trooper Clarence Hughes were patrolling on Dunlap Street in Uniontown City. N.T. Hearing, 3/9/18, at 4, 5, 6. Trooper Kezmarsky testified that that area is "a hot spot," which means it is "a very high crime area. A lot of violent crimes take place there. There's multiple shootings that take place there, as well as a lot of drug transactions in that area." *Id.* at 5. The trooper explained that as he and Trooper Hughes patrolled that location in their marked police cruiser with the windows down, they observed "three males standing on the sidewalk." *Id.* at 6. As the police car passed the men, Trooper Kezmarsky smelled "a strong odor of marijuana coming from the area where they were standing." *Id.* Trooper Hughes also smelled marijuana. *Id.* at 53.

The troopers stopped their vehicle and began to approach the three men. *Id.* at 6-7. At that point, Appellant "started to walk away from the other two individuals. He [was] distancing himself from them[,] at which time [Trooper Kezmarsky] told him to stop." *Id.* at 10. Appellant looked over his shoulder and "made eye contact" with the trooper, but continued to walk away. *Id.* As the trooper got closer to Appellant, "[h]e stopped with his body bladed towards [the trooper]. The right side [of Appellant's body] was facing away and as [the trooper] was trying to move with [Appellant], his right side continued to move away from [the trooper, as if Appellant was] distancing that side of his body [from the trooper]." *Id.* at 11. Eventually, Appellant

- 2 -

stopped moving, and Trooper Kezmarksy began a pat-down of Appellant's body for his and Appellant's safety. *Id.* at 12. When the officer felt along the "waist[-]band area" on Appellant's right side, he "felt something hard. … As soon as [the trooper] touched it[, Appellant] jerked away from [the trooper] and started running on foot." *Id.* Trooper Kezmarsky chased Appellant, telling "him to stop several times." *Id.* During the chase, Trooper Kezmarsky "saw [Appellant] throw a clear … bag with a white substance in it…." *Id.* Eventually, the trooper caught and arrested Appellant, after which he retrieved the bag Appellant had thrown. *Id.* at 13, 14. The contents of the bag were later determined to be approximately 103 grams of cocaine. *Id.* at 15.

At the conclusion of the suppression hearing, the trial court entered an order denying Appellant's motion to suppress. His case proceeded to a non-jury trial and he was ultimately convicted of PWID. Appellant was sentenced as set forth *supra*.

Appellant thereafter filed a timely, *pro se* notice of appeal. His privately-retained trial counsel filed a petition to withdraw, which the court granted. The court then appointed new appellate counsel, but that attorney failed to comply with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. As such, the trial court deemed Appellant's claims waived in its Rule 1925(a) opinion. Additionally, the brief filed by Appellant's attorney set forth only conclusory statements that were inadequate for this Court to meaningfully review his issues. Accordingly, this

Court remanded for the trial court to appoint new counsel for Appellant, who would then file a Rule 1925(b) statement on Appellant's behalf. ***See Commonwealth v. Randolph***, No. 865 WDA 2019, unpublished judgment order at *3 (Pa. Super. filed 12/17/19).

On remand, the court appointed present counsel, who filed a Rule 1925(b) statement. The court then filed a Rule 1925(a) opinion on February 10, 2020, and Appellant thereafter filed a new brief stating one issue for our review: "Whether the trial court erred by denying Appellant's *omnibus* pre-trial motion in which Appellant sought to suppress the evidence in this case, when the arresting officer, Trooper … Kezmarsky, lacked the reasonable suspicion necessary for an investigatory detention and lacked the reasonable belief that Appellant may be armed and dangerous necessary for a frisk?" Appellant's Brief at 3.

> To begin, we note:
>
> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the

conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526–27 (Pa. Super. 2015) (citation omitted).

In this case, Appellant contends that he was subject to a ***Terry*** stop and frisk that were not supported by reasonable suspicion. He stresses that the troopers never saw him or his two companions smoking marijuana. Thus, he reasons that, "[w]ithout a source for the marijuana odor, a reasonable person could only conclude that at least one of these males had recently smoked marijuana. Such a conclusion was at most a mere hunch, and does not lead to a rational inference that criminal activity was afoot." Appellant's Brief at 13. Appellant also argues that his walking away from the troopers as they approached does not amount to reasonable suspicion that a crime is being, or has been, committed. Accordingly, he contends that his ***Terry*** stop was unlawful.

Additionally, Appellant contends that his ***Terry*** frisk was not supported by reasonable suspicion that he could be armed. According to Appellant, the troopers stopped to investigate the crime of possession of marijuana, which he claims "does not typically involve violence or the use of a weapon, especially since marijuana is legal in many states." ***Id.*** He also claims that Trooper Kezmarsky gave no reason to suspect he was armed and dangerous, other than his presence in a high-crime area. ***Id.*** Thus, Appellant concludes that his ***Terry*** stop and frisk were both illegal.

We do not agree.

In order to conduct a legitimate *Terry* stop and frisk, an officer must have reasonable suspicion supporting two beliefs: first, that there is "criminal activity afoot," and second, that the individual subject to the investigative stop is "armed and presently dangerous." *Commonwealth v. Guess*, 53 A.3d 895, 901 (Pa. Super. 2012) (internal citations omitted). Our Supreme Court stated it another way in ... *Hicks*...:

First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

*Hicks*, 208 A.3d at 921. "[T]he purpose of this limited search is … to allow the officer to pursue his investigation without fear of violence." *Guess*, 53 A.3d at 901 (quoting *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011)).

Here, we conclude that the investigatory stop began at the moment Trooper Kezmarsky first directed Appellant to stop as he began walking away from the approaching troopers, as no reasonable person in Appellant's position would have felt free to leave upon that command. *See Hicks*, 208 A.3d at 926–27 ("For purposes of the Fourth Amendment, a person is 'seized' when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' When a police officer 'accosts an individual and restrains his freedom to walk away, he has "seized" that person.'") (citations omitted). Indeed, Appellant was not free to leave, as he attempted to keep walking and was pursued by the trooper. Thus, we must discern if Trooper Kezmarsky had reasonable suspicion that Appellant

had committed, or was committing, an offense at the point he directed Appellant to stop.

At that time, Trooper Kezmarsky knew that Appellant was located in a high crime area where there were often violent crimes, guns, and drugs. Additionally, there was a strong odor of marijuana emanating from the area where Appellant and his companions were standing, and Appellant began to walk away as the troopers approached. In *In re J.G.*, 860 A.2d 185 (Pa. Super. 2004), we held that an individual's "presence in a high crime area, coupled with his decision to walk away from approaching police officers, does not, *absent more*, provide reasonable suspicion of criminal activity to justify an investigatory stop and search." *Id.* at 189 (emphasis added). Here, there was more — Trooper Kezmarsky's smelling marijuana coming from the area where Appellant and his cohorts were standing. The fact that the trooper could not see the source of that odor did not make it unreasonable for him to stop to further investigate. Thus, we conclude that the fact of Trooper Kezmarsky's smelling marijuana, coupled with the high crime location and Appellant's walking away as the troopers approached, provided Trooper Kezmarsky with reasonable suspicion to conduct the *Terry* stop of Appellant. *See In Interest of A.A.*, 195 A.3d 896, 904 (Pa. 2018) (finding that "the odor of marijuana alone, particularly in a moving vehicle, is sufficient to support at least reasonable suspicion, if not the more stringent requirement of probable cause") (citations omitted).

We additionally conclude that Trooper Kezmarsky reasonably suspected that Appellant could be armed and dangerous, thereby justifying the **Terry** frisk of Appellant. Contrary to Appellant's argument on appeal, Trooper Kezmarsky suspected he might be armed not only because Appellant was in a high crime area, but also because Appellant continued to walk away from the trooper after repeated commands to stop, and then 'bladed' his body to keep his right side away from the trooper. The totality of these facts were sufficient to establish Trooper Kezmarsky's reasonable suspicion to conduct a **Terry** frisk of Appellant's person. Therefore, the trial court did not err in denying Appellant's motion to suppress the evidence in this case.

Judgment of sentence affirmed.

Judge Dubow joins this memorandum.

Judge Nichols concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/24/2020