J-A30006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DEMETRIUS STURGIS | : | |
| Appellant | : | No. 2853 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 27, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007583-2023

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED JANUARY 22, 2026**

Demetrius Sturgis appeals from the judgment of sentence, entered in the Court of Common Plea of Philadelphia County, after he was convicted by a jury of evading arrest or detention on foot[1] and the summary offense of criminal mischief – damage property.[2]  After careful review, we affirm the convictions, but vacate the sentence, and remand for resentencing with instructions.

On November 14, 2023, the Commonwealth charged Sturgis with the above-mentioned offenses, in addition to several firearm violations, ***see infra*** at n.5, after he was stopped by officers in Philadelphia on the evening of

_____

[1] 18 Pa.C.S.A. § 5104.2(a).  The trial court graded Sturgis' conviction under this subsection as a second-degree misdemeanor.  ***See infra*** at 8-9.

[2] ***Id.*** at § 3304(a)(5).  Evidence at trial showed that when Sturgis was in the police cruiser, following his arrest, he "kicked at the door and window of the police vehicle causing damage to that vehicle."  N.T. Jury Trial, 7/9/24, at 21.

October 13, 2023. As he fled from the police during the detention, Sturgis discarded an object that officers later recovered and identified as a firearm. On November 27, 2023, Sturgis filed an omnibus motion to suppress the physical evidence uncovered from the officer's stop and search because: "he was arrested without probable cause; he was subjected to a stop and frisk on less than reasonable suspicion; and he was arrested without a lawfully issued warrant or other legal justification." Omnibus Motion, 11/27/23, at 1.

On May 3, 2024, the trial court held a suppression hearing where Officer Victor Vespasiani, a four-year veteran on the force from the 12th District, testified for the Commonwealth. Officer Vespasiani testified that around 9:50 p.m. on October 13, 2023,[3] he was patrolling the 6500 block of Elmwood Avenue with his partner in a marked police car and in uniform. *Id.* at 5-6. He described the area as one where he had personally "responded [] to carjacking[s,] shootings, homicides, robberies[,] disturbances, [and] thefts." *Id.* at 6. As the officers proceeded southbound on 65th Street and approached Elmwood Street, Officer Vespasiani testified that he saw "a male jump[] in the middle of the street, and he's kind of flailing his arms [and h]e yells, [']Police, help, help.[']" *Id.* at 6-7. At that point, Officer Vespasiani's partner stop[ed] the police car to "g[e]t out to see . . . what was going on[.]" *Id.* at 7.

_____

[3] We note the discrepancies among the parties' briefs, the trial court opinion, and notes of testimony from the suppression hearing regarding the date of the incident. Because the criminal complaint, search warrant application, and arrest report contained in the certified record all indicate that the incident occurred on October 13, 2023, we use that as the correct date for purposes of this appeal.

As Officer Vespasiani's partner exited the vehicle, the male "point[ed] over to [Sturgis], and he sa[id ']that's him. That's him.[']" *Id.* Officer Vespasiani then looked at Sturgis, who "immediately put his hands in the air, and . . . started to back away from us[,] back-pedaling." *Id.* at 8. Officer Vespasiani's partner then approached the male to talk to him further and, as Officer Vespasiani approached Sturgis to talk to him, Sturgis continued to back away. *Id.* at 7-8. At that point, Officer Vespasiani told Sturgis "to stop, and [] grabbed his wrist." *Id.* "[Then, Sturgis] pulled away from [Officer Vespasiani] and he took off running." *Id.* at 8. Officer Vespasiani pursued Sturgis on foot as he ran "northwest across the [] trolly track[s]." *Id.* As soon as Sturgis crossed the tracks, Officer Vespasiani saw Sturgis "drop[] an object out of his waistband to the ground[, which] made a metallic sound when it hit the ground." *Id.* at 8-9. At that point, believing that the discarded item was a firearm, Officer Vespasiani told his partner to grab the object. *Id.* at 9. Unable to grab the item at the time, the officers continued to pursue Sturgis on foot, for about one block, "though an alleyway [and] a breezeway[,] where ultimately [Sturgis was placed] in custody." *Id.* Ultimately, Officer Vespasiani returned to the location where Sturgis dropped the object and recovered a firearm. *Id.* at 10.[4]

---

[4] At the suppression hearing, the Commonwealth entered into evidence Officer Vespasiani's partner's body-worn camera footage from the incident, as well as the property receipt for the black FEG Model MPPMK .380 caliber firearm recovered from the scene. *Id.* at 10-12.

On May 7, 2024, the court denied Sturgis' motion to suppress. Following a jury trial held on two days in July 2024, Sturgis was found guilty of the above-mentioned offenses.[5] On September 27, 2024, Sturgis was sentenced to 2 years of probation.[6]

Sturgis filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Sturgis presents the following issue for our review: "Was the evidence sufficient[,] as a matter of law[,] to find that [] Sturgis committed the offense of evading arrest or detention on foot because the police officer's initial attempt to detain him was not lawful?" Appellant's Brief, at 2.[7]

_____

[5] Sturgis was acquitted of the following crimes: firearms not to be carried without a license, *see* 18 Pa.C.S.A. § 6106, and carrying a firearm in public in Philadelphia, *id.* at § 6108. The charge of possession of firearm prohibited, *id.* at § 6015(a)(1), was nolle prossed.

[6] Sturgis received no penalty for the criminal mischief conviction.

[7] Notably, at the suppression hearing, defense counsel argued that at the time Officer Vespasiani "went up to [] Sturgis and physically grabbed him—**a seizure had occurred at that point, because he physically grabbed him**. The question is, at the point where he physically grabbed him, was there reasonable suspicion to do that[?]" *See* N.T. Suppression Hearing, 5/3/24, at 40-41 (emphasis added). However, on appeal Sturgis argues that he "**was subject to an investigative detention from the moment Officer Vespasiani ordered him to stop**." Appellant's Brief, at 11-12, 20 (emphasis added). Defense counsel acknowledged at the suppression hearing, after re-watching the officer's body cam video, that the officer's order to stop came before he grabbed Sturgis. *See* N.T. Suppression Hearing, 5/3/24, at 30-31. Then, in his Rule 1925(b) statement, Sturgis generally raises a claim that "[t]he police officer's initial attempt to detain [him] . . . was not lawful . . . because **at the moment [he] was seized**, the officer lacked reasonable
*(Footnote Continued Next Page)*

Our standard of review when faced with a challenge to the sufficiency of the evidence is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

---

suspicion or probable cause to believe that criminal activity was afoot." Rule 1925(b) Statement, 12/11/24, at 2 (emphasis added).

"[Our] appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." ***Commonwealth v. Little***, 903 A.2d 1269, 1272-1273 (Pa. Super. 2006). ***See Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression[.]"); ***see also Commonwealth v. Gordon***, 528 A.2d 631, 638 (Pa. Super. 1987) (this Court cannot review theory of error different from theory presented to trial court **even if both theories support the same basic allegation of error** giving rise to the claim for relief). Here, the defense's arguments at the suppression hearing and on appeal differ. However, we find that they differ not to the extent that caselaw would dictate waiver where both arguments involve the same legal theory—that Officer Vespasiani lacked reasonable suspicion to stop Sturgis. ***Cf. Commonwealth v. Negri***, 198 A.2d 595, 600 (Pa. 1964) (where defendant challenged validity of arrest and search of hotel room based on officers' mode of entry and claim that officer's lacked legal authority to enter room, but never asserted claim in trial court that officers failed to tell defendant exact charges for which he was being arrested, latter claim waived on appeal). We caution defense counsel to be careful of walking this fine waiver-line in future cases.

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (en banc) (citations omitted). In order to obtain a conviction for evading arrest or detention on foot, the Commonwealth must prove that "the [defendant] knowingly and intentionally fle[d] on foot from a public servant **attempting to lawfully arrest or detain that person**." 18 Pa.C.S.A. § 5104.2(a) (emphasis added).

Sturgis argues that "[a]t the time Officer Vespasiani attempted to detain [him], he lacked reasonable suspicion that [Sturgis] was involved in criminal activity [and, thus,] his attempt to detain him was unlawful[.]" Appellant's Brief, at 8. Accordingly, Sturgis claims that the Commonwealth failed to prove the subsection 5104.2(a) element that the officer was "attempting to lawfully arrest or detain" him. *Id.* We disagree.

It is well-established that "[w]here the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the [defense] as remains uncontradicted when read in the context of the record as a whole." *Commonwealth Cartagena*, 63 A.3d 294, 298 (Pa. Super. 2013) (en banc). Moreover, a court assessing reasonable suspicion considers the totality of the circumstances giving due weight to the specific reasonable inferences the police officer is entitled to draw from the facts considering his experience.

*See Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa. Super. 2019) (citation omitted).

While a defendant's presence in a high-crime area, coupled with his decision to "walk away" from police officers upon their approach, does not establish reasonable suspicion of criminal activity sufficient to justify an investigatory stop and search, those are not the facts of the instant case. *See In the Interest of J.G.*, 860 A.2d 185, 189 (Pa. Super. 2004). Here, the trial court correctly concluded that, based on the totality of the circumstances, Officer Vespasiani had reasonable suspicion to stop Sturgis immediately prior to Sturgis fleeing and discarding the firearm. *See* N.T. Suppression Hearing, 5/3/24, at 24 (trial judge telling defense counsel, "Your client is walking away. [Officer Vespasiani], and your client is walking away. The officer didn't have his gun drawn. He didn't have anything. . . . What was he supposed to do, let him walk away?").

The uncontroverted Commonwealth evidence shows that the officers acted reasonably in responding to an individual who was clearly in distress, was asking for help, and identified Sturgis as an alleged perpetrator. Under these facts, the officers had the authority to briefly detain Sturgis and conduct an inquiry into the situation. However, when Sturgis continued to back away from Officer Vespasiani as he approached him to further investigate the situation, and where Sturgis refused to comply with the officer's multiple requests to "stop," at that point, Officer Vespasiani reasonably suspected that criminal activity was afoot and was permitted to officially detain him. *See*

*Commonwealth Garcia*, 311 A.3d 1138, 1145 (Pa. Super. 2024 (citation omitted) (to establish reasonable suspicion, officer "must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot.").

Thus, there was sufficient evidence to prove that Officer Vespasiani was "attempting to lawfully . . . detain" Sturgis, for purposes of proving the crime of evading arrest or detention on foot. *See* 18 Pa.C.S.A. § 5104.2(a). Accordingly, we find no merit to this claim.

Nevertheless, our review does not end there as the Commonwealth notes that because Sturgis was acquitted of the firearm charges, *see supra* at n.4, the trial court improperly used those offenses to enhance the grade of his section 5104.2 conviction. *See* Appellee's Brief, at 2, 12-15. Accordingly, it states that it "would not oppose a limited remand to correctly grade [Sturgis'] conviction as a summary offense rather than a second-degree misdemeanor." *Id.* at 14. We agree with the Commonwealth's position.

"A claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence." *Commonwealth v. Mendozajr*, 71 A.3d 1023, 1027 (Pa. Super. 2013); *see also Commonwealth v. Wolfe*, 106 A.3d 800, 801 (Pa. Super. 2014) ("challenge to the legality of the sentence can never be waived and may be raised by this Court *sua sponte*"). Instantly, the underlying offense for which Sturgis was

convicted is a summary offense[8] (criminal mischief), not a felony or misdemeanor. Thus, Sturgis' evading arrest/detention on foot conviction is properly graded as a summary offense. **See** 18 Pa.C.S.A. § 5104.2(b)(4) (offense under subsection 5104.2(a) graded as "a summary offense," except as provided in subsections (b)(1)-(3) where underlying offenses constitute felonies or misdemeanors).

Convictions affirmed. Judgment of sentence vacated.[9] Case remanded to the trial court for resentencing with instructions that Sturgis' subsection 5104.2(a) conviction be graded as a summary offense. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/22/2026

---

[8] **See** 18 Pa.C.S.A. § 106(c)(2) (stating persons convicted of summary offenses "may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days").

[9] Because the trial court did not impose a further sentence on Sturgis' criminal mischief sentence, resentencing is warranted. **See Commonwealth v. Bartrug**, 732 A.2d 1287 (Pa. Super. 1999) (sentencing error in multi-count case normally requires appellate court to vacate entire judgment of sentence so trial court can restructure sentencing scheme on remand).