**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kendall JEFFERSON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.

Filed June 22, 2004.

Mark Cichowicz, Philadelphia, for appellant.

Jason Fetterman, Assistant District Attorney, for Commonwealth, appellee.

Before: BENDER, BECK and KELLY, JJ.

OPINION BY BECK, J.:

¶ 1 The question we address is whether a police officer's observation of an individual in a high crime area, coupled with that individual's prompt flight upon observing the officer, combine to establish reasonable suspicion that criminal activity is afoot, thereby permitting a *Terry*[1] stop. Based on the Pennsylvania Supreme Court's recent decision in *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161 (2001) (*D.M.II*), we are compelled to conclude that a *Terry* stop is warranted under such circumstances and, further, no violation of the state constitution occurs when such a stop is made.

¶ 2 The relevant facts of this case are as follows. Police were on marked patrol in a Philadelphia neighborhood in which drug sales were common and a shooting recently occurred. When the officers observed appellant and another man on the street in the area, the men promptly ran away. The officers stopped to investigate and the pair responded by fleeing in a different direction. The police then gave chase and during the pursuit, appellant tossed a bag containing PCP to the ground.

¶ 3 At suppression and now on appeal, appellant argued that the officers had no authority to pursue him because the facts failed to establish reasonable suspicion that criminal activity was afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996). Relying on *Matos*, appellant claimed that because the pursuit was not supported by reasonable suspicion, it constituted an unlawful seizure and the contraband he discarded must be suppressed. In *Matos*, our supreme court held that under state constitutional principles, police who pursued a fleeing suspect were required to establish reasonable suspicion warranting pursuit in order to recover contraband discarded by the suspect.

¶ 4 Both parties recognize that the precise legal question in this case is whether the observation of appellant in a high crime area and appellant's flight from police combine to establish the familiar *Terry* standard of reasonable suspicion. Appellant concedes that such a combination of factors clearly satisfies *Terry* for purposes of the federal constitution based on *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In *Wardlow*,

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

a four-car caravan was investigating drug activity in Chicago. One of the officers observed the defendant carrying a bag. When the defendant saw police, he immediately fled. The police apprehended him and, during a pat-down, recovered a gun. Prior to trial, the defendant sought suppression of the firearm, but was unsuccessful.

¶ 5 The United States Supreme Court held that although mere presence in a high crime area is insufficient to support a *Terry* stop, the additional factor of unprovoked flight was indeed relevant. The Court ultimately concluded that the two factors in combination were sufficient to satisfy the *Terry* standard of reasonable suspicion. *Id.* at 124, 120 S.Ct. 673.

¶ 6 Appellant insists that this court is empowered to reject the rationale of *Wardlow* under an interpretation of state constitutional law. We cannot agree.

¶ 7 In *In the Interest of D.M.*, 560 Pa. 166, 743 A.2d 422 (1999) (*D.M.I*), an anonymous tipster told police that a black male dressed in blue jeans, a white t-shirt and white sneakers was at a certain intersection and "had a gun." Police arrived at the scene and began to approach a male matching the description. The young man began to run, but was apprehended by police. A search yielded a .32 caliber handgun.

¶ 8 Following an unsuccessful attempt at suppression and a subsequent adjudication of delinquency, the matter came before the state supreme court. The court held that under both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, the fact that a suspect 1) matches the description of an anonymous tip reporting a man with a gun and 2) flees police when they arrive on the scene, does not establish reasonable suspicion sufficient to support further investigation under *Terry*.

¶ 9 The Commonwealth appealed the state supreme court's decision to the United States Supreme Court, which in turn remanded the matter to our supreme court and directed it to reconsider the case in light of *Wardlow*. Upon reconsideration, a majority of our supreme court held that the facts (matching an anonymous tip and flight) satisfied reasonable suspicion not only under federal constitutional principles pursuant to *Wardlow*, but also under a state constitutional analysis, thereby reversing its earlier conclusion. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163–64 (2001). (*D.M.II*).

¶ 10 The following excerpt from *D.M. II* is particularly relevant here:

> Following [*Wardlow*], it is evident that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a *Terry* stop under the Fourth Amendment. In light of this recent case law, it is clear that our original analysis in this case was contrary to the United States Supreme Court's subsequent analysis in *Wardlow*.

*Id.* at 450, 781 A.2d at 1164.

¶ 11 Although the facts of this case differ from those in *D.M.*, the circumstances here are precisely the same as those in *Wardlow*, that is, the factors at issue are a high crime area and flight from police. For that reason, our supreme court's note that the federal and state constitutional provisions protect the same interests is significant, as is its recognition that Pennsylvania jurisprudence has "consistently followed" the federal rationale in cases involving interpretation of *Terry*. *Id.* at 449, 781 A.2d at 1163. Also important is the fact that the *D.M. II* court specifically addressed and rejected the suggestion that it depart from the federal high court's reasoning on state constitutional grounds:

Appellant now asks this court to depart from this longstanding practice of following *Terry*. However, we see no reason at this juncture to embrace a standard other than that adhered to by the United States Supreme Court. Appellant is correct that our case law has questioned the relevancy of flight in reviewing the totality of the circumstances. Indeed, in our original opinion in *D.M. [I]*, we concluded that flight was not a factor that would weigh in favor of finding reasonable suspicion or probable cause under the totality of the circumstances test. Nevertheless, this conclusion has been directly contradicted by the United States Supreme Court's recent decision in *Wardlow*.

*Id.* 781 A.2d at 1163 (citation omitted).

■ ¶ 12 In light of the Pennsylvania Supreme Court's holding in *D.M. II*, and the explicit reasoning set out in that case, we conclude that the court adopted the rationale of *Wardlow* for state constitutional purposes. As a result, we are compelled to find that appellant here was not entitled to suppression because the facts established reasonable suspicion under both federal and state principles.[2]

¶ 13 Judgment of sentence affirmed.

---

2. Although the dissent in *D.M. II* makes a compelling argument that the state constitutional issue was decided in a contrary manner in *Matos*, we recognize that we are bound to follow the *D.M. II* majority's clear adoption of *Wardlow*.