J-A01008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON COLEMAN | : | |
| | : | |
| Appellant | : | No. 590 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 17, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001323-2022

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED MAY 31, 2024**

Brandon Coleman appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he was found guilty, following a stipulated waiver trial, of one count each of persons not to possess a firearm[1] and firearms not to be carried without a license.[2]  After careful review, we affirm.

On February 5, 2022, Philadelphia Police Officer Kevin Tilghman and his partner were on patrol in the area of Osage Avenue and 55th Street.  At approximately 7:45 p.m., Officer Tilghman encountered Coleman's vehicle double-parked on the 5500 block of Osage Avenue.  **See** N.T. Suppression

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] **Id.** at § 6106(a)(1).

Hearing, 10/19/22, at 6-7. After Officer Tilghman pulled his patrol car behind Coleman's vehicle, Coleman began driving away. As Coleman drove away, Officer Tilghman looked up Coleman's vehicle tag information in the NCIC/PCIC database, which revealed that the vehicle had been unregistered for approximately eight months, since June 2021. *Id.* at 7. Coleman drove around the block and again double-parked on the street. *Id.* Upon seeing the car return, Officer Tilghman activated his lights and initiated a vehicle investigation. *Id.* at 7 & 24. Officer Tilghman approached the driver's side of Coleman's vehicle to inform him that the car was unregistered and, while relaying this information, Officer Tilghman heard a loud "thump." *Id.* at 7; *id.* at 13 (Officer Tilghman testifying "thump" sounded like "a metal object . . . . hitting the floorboard of the car"); *id.* at 17 (Officer Tilghman testifying, on cross-examination, he heard what sounded like "something hard hitting the floor"). The sound "startled" Officer Tilghman, who then activated his body camera.[3] *Id.* at 7.

Officer Tilghman motioned to his partner to get out of the patrol vehicle and, while waiting for Officer Tilghman's partner, Coleman gave Officer Tilghman his driver's license and asked to call his boss. *Id.* at 13, 18. Officer Tilghman allowed Coleman to call his boss and also asked him to turn off the

---

[3] Officer Tilghman acknowledged that Philadelphia Police Department policy dictates that officers should turn on their body-worn cameras at the time they exit their vehicles. However, he also stated that he did activate his body camera about 20 seconds into the stop. *Id.* at 15.

car. *Id.* at 18-19. After Coleman turned off the car, Officer Tilghman asked if there was a firearm in the vehicle. *Id.* at 7.

Officer Tilghman asked Coleman to step out of the vehicle, at which time Coleman also gave permission for the officers to search his car. As soon as Coleman stepped out of the vehicle, Officer Tilghman and his partner conducted a pat-down frisk of his person. *Id.* at 8. The officers immediately felt an object that appeared to have the shape of a firearm and, because it was within reach, Officer Tilghman reached into Coleman's sweatshirt pocket and retrieved a ".38 Special" revolver. *Id.* at 8, 13. The officers did not locate anything during the search of the vehicle that explained the thump heard by Officer Tilghman. *Id.* at 27. Coleman was immediately placed under arrest and subsequently charged with the above offenses, as well as carrying a firearm on public streets or public property in Philadelphia.[4]

Coleman filed a pre-trial motion to suppress, and, on October 19, 2022, the trial court held a hearing, wherein Coleman argued that Officer Tilghman did not possess the requisite reasonable suspicion or probable cause to frisk him at the time of the stop, in violation of the Fourth and Fourteenth amendments of the United States Constitution, as well as additional protections provided by the Pennsylvania Constitution. *See* N.T. Suppression Hearing, 10/19/22, at 4. At the hearing, the court heard testimony from Officer Tilghman, as well as argument from both Coleman and the

---

[4] *See* 18 Pa.C.S.A. § 6108.

- 3 -

Commonwealth. The court took the matter under advisement and, on December 1, 2022, denied Coleman's motion to suppress.

On December 16, 2022, the trial court held a stipulated waiver trial. The evidence submitted to the court was Officer Tilghman's body camera, a property receipt, photographs of the recovered firearm, the criminal information, a certification regarding a license to carry firearms, and a firearms identification unit laboratory report. *See* N.T. Waiver Trial, 12/16/22, at 7-8; *see also* Exhibits C-1, C-2, C-8, C-9, C-12, C-13. In addition, the parties stipulated that Coleman had a prior record that prohibited him from possessing a firearm. *See* N.T. Waiver Trial, 12/16/22, at 8. At the conclusion of the trial, the court found Coleman guilty of persons not to possess a firearm and firearms not to be carried without a license. *Id.* at 9. The trial court deferred sentencing and ordered a presentence investigation report, as well as a mental health evaluation. *Id.* On February 17, 2023, the court sentenced Coleman to 3½ to 8 years' incarceration followed by 2 years' probation for persons not to possess a firearm, and 5 years' probation for firearms not to be carried without a license, to be served concurrently. *See* N.T. Sentencing Hearing, 2/17/23, at 20; *see also* Order of Sentence, 2/17/23.

On March 7, 2023, Coleman filed a timely notice of appeal. Both Coleman and the trial court have complied with Pa.R.A.P. 1925. Coleman raises the following issue for our review on appeal: "Did the [trial] court err in denying [] Coleman's motion to suppress where he was frisked by police

without reasonable suspicion that he was armed and dangerous?" Appellant's Brief, at 3.

Coleman argues that although Officer Tilghman had reasonable suspicion to stop his car,[5] he lacked reasonable suspicion to frisk Coleman's person. *See* Appellant's Brief, at 12. Specifically, Coleman argues that his "nervousness and pre-frisk movements inside the car do not establish reasonable suspicion to frisk [his person] even though the frisk occurred in an area known for narcotics sales." *Id.* The "thump" sound heard by Officer Tilghman "gave him at most reasonable suspicion to [search the] car, but [not] reasonable suspicion to frisk his person." *Id.* Because Officer Tilghman lacked the requisite reasonable suspicion to search his person, Coleman argues that the recovered firearm should have been suppressed and the suppression court erred by denying his motion. *Id.* at 12-13. We disagree.

_____

[5] Coleman acknowledges that the car's registration was expired and in violation of the Motor Vehicle Code. *See* 75 Pa.C.S.A. § 1301(a). Officer Tilghman testified at the suppression hearing that he originally pulled over Coleman to inform him that the car was unregistered, and he needed to get it registered. *See* N.T. Suppression Hearing, 10/19/22, at 7. "Traffic stops based on a reasonable suspicion[] either of criminal activity or a violation of the Motor Vehicle Code under the authority of [s]ection 6308(b) must serve a stated investigatory purpose." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc). "The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code." *Commonwealth v. Enick*, 70 A.3d 843, 846 n.3 (Pa. Super. 2013) (citation and quotation marks omitted). Officer Tilghman provided the necessary articulable facts giving rise to probable cause when he testified that a search of the car's tags showed that the vehicle had been unregistered for more than six months. *See* N.T. Suppression Hearing, 10/19/22, at 7.

The appellate standard of review for a challenge to the denial of a suppression motion is well-settled:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "We may reverse the legal conclusions. . . if they are in error[;] our standard of review of the legal conclusions reached by the suppression court is *de novo*." *Commonwealth v. Galvin*, 985 A.2d 783, 795 (Pa. 2009) (citations omitted). In addition, our scope of review includes only the record available to the suppression court. *See Commonwealth v. Walls*, 206 A.3d 537, 540 (Pa. Super. 2019).

Both the United States and Pennsylvania Constitutions protect citizens from unreasonable police searches and seizures:

> It is well[-]settled that the purpose of both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution is to protect citizens from unreasonable searches and seizures. *Commonwealth v. Jackson*, [] 698 A.2d 571, 573 (Pa. 1997). In the seminal case of *Terry v. Ohio*, 392 U.S. 1, [] (1968), the United States Supreme Court indicated that police may stop and frisk a person where they ha[ve] a reasonable suspicion that criminal activity is afoot. In order to determine whether the police had a reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. *United States v. Cortez*, 449 U.S. 411, 417 [] (1981). Based upon that

- 6 -

whole picture[,] the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. [*Id.*] at 417-18. Pennsylvania courts have consistently followed *Terry* in stop and frisk cases[.] *Jackson*; *see also Commonwealth v. Cook*, [] 735 A.2d 673, 677 (Pa. 1999).

*In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) (internal quotations omitted). In addition, "[i]n determining whether the officer acted reasonably . . . due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Commonwealth v. Jackson*, 302 A.3d 737, 741 (Pa. 2023) (citations omitted). *See also Commonwealth v. Williams*, 980 A.2d 667, 671 (Pa. Super. 2009) (reasonable suspicion based on totality of circumstances viewed through trained eyes of police officer).

In *In re T.W.*, 261 A.3d 409 (Pa. 2021), our Supreme Court reiterated that "[t]he purpose of a *Terry* frisk is to dispel any fear that the stopped suspect is armed and dangerous." *Id.* at 421. Such a frisk search "does not require the officer to be absolutely certain that the individual is armed." *Id.* (internal quotation marks and citation omitted). *See also Minnesota v. Dickerson*, 508 U.S. 366, 372-73 (1993) (officer must have reasonable suspicion of criminal activity prior to pat down search); *Commonwealth v. Bozeman*, 205 A.3d 1264, 1274 (Pa. Super. 2019) (officer must articulate specific facts from which to infer individual was armed and dangerous). The suppression court, in determining whether a frisk was constitutionally valid and supported by reasonable suspicion, examines "whether a reasonably

prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." ***Commonwealth v. Taylor***, 771 A.2d 1261, 1269 (Pa. 2001) (quotation marks and citation omitted).

Here, in denying Coleman's suppression motion, the court placed the following findings of fact and conclusions of law on the record:[6]

> On February 5th, 2022, at approximately 7:45 p.m., [] Officer [] Tilghman[,] assigned to [Philadelphia's] 18th District Tactical Unit and with the police department for eight years, was on routine patrol with his partner on the 5500 block of Osage Avenue. They were in uniform and in a marked police car.
>
> They pulled behind [Coleman's] vehicle, which was double parked. [Coleman]immediately pulled away without incident. Officer Tilghman, though, began to run [Coleman's] license plate and the vehicle came back with a registration that expired in June of 2021. The officer[s] circled the block and encountered [Coleman] again, and they activated their lights to announce their presence.
>
> Officer Tilghman exited the vehicle and approached the driver's side of [Coleman's] vehicle. Officer Tilghman testified that he intended on merely advising [Coleman] that he needed to get his vehicle registered, which is why he did not immediately activate his body-worn camera. He acknowledged that police directives require it to be activated when coming into contact with the citizens of Philadelphia.
>
> The video depicts the approach of Officer Tilghman and [Coleman] rolling down his window. The conversation begins without audio. Officer Tilghman testified that while speaking to [Coleman], he heard a loud thump, which immediately concerned him, and that he signaled to his partner to come over with his flashlight. This is also confirmed on video.
>
> Officer Tilghman testified he immediately began to question [Coleman] about a gun in the car. This is also confirmed by the video.

---

[6] ***See*** Pa.R.Crim.P. 581(I).

[Coleman] is then asked to exit the vehicle, and he complies without incident. Police frisked [Coleman,] as seen on video. An object in the front pocket of [Coleman's] hoodie is manipulated. The police are seen reacting quickly, securing [Coleman], and removing a silver .38 Special revolver from [Coleman's] front pocket. [Coleman] is cooperative in following commands.

Officer Tilghman testified the area where this occurred is known for crime, particularly narcotics sales, and that there was a homicide at the nearby corner store approximately one year prior to the incident.

Conclusions of law.

This [c]ourt had the opportunity to observe the demeanor of [Officer Tilghman] during his testimony and to carefully review the body-worn camera of Officer Tilghman that was introduced into evidence.

[Coleman's] argument on the motion is focused primarily on the credibility of Officer Tilghman as it relates to his having heard a loud thump, despite the fact [that Coleman's] gun remained securely in his front hoodie pocket. [Coleman] bolsters this argument with Officer Tilghman's failure to immediately activate his camera upon exiting his vehicle.

Officer Tilghman explained in his testimony that his intention was to just issue [Coleman] a warning. The [c]ourt accepts this explanation[,] as Officer Tilghman's partner did not accompany him to the vehicle.

Officer Tilghman's actions and reactions[,] even as audio is activated[,] show Officer Tilghman[] signal to his partner with his flashlight. He then immediately begins to question [Coleman] about a gun as the audio begins to play.

Additionally, [Coleman] is seen on video moving his right hand to the right and turning to the right. [Coleman] is seen looking down and then back up.

At this time, Officer Tilghman signals over to his partner with his flashlight, and when he arrives immediately starts asking about the gun and the sound he heard.

This motion is presented challenging the credibility of the testifying officer. The [c]ourt found Officer Tilghman to have

- 9 -

testified credibly and the video to have confirmed his testimony. Therefore, [Coleman's] motion to suppress is denied.

N.T. Suppression Hearing II, 12/1/22, at 3-7.

Coleman argues that the court erred when it denied his suppression motion for several reasons. First, he argues that any nervousness during his interaction with Officer Tilghman was not sufficient to establish reasonable suspicion to conclude that he was armed and dangerous. **See** Appellant's Brief, at 13. Coleman points to Officer Tilghman's testimony that Coleman "increasingly got nervous" as the interaction continued. **Id.** at 15 (citing N.T. Suppression Hearing, 10/19/22, at 8). Coleman cites to this Court's en banc decision in **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa. Super. 2013), to support his argument here. There, our Court held that nervousness of a driver suspected of a Motor Vehicle Code violation "does not suffice to allow police to conduct a **Terry** frisk and a protective weapons search of a vehicle." **Id.** at 306. The Court expressed particular concern with the suppression hearing transcript's lack of

> information about [the police officer's] level of training or experience in conducting traffic stops (or even years of service) and [that that transcript was] devoid of any testimony that [the officer] believed, based on his training and experience, that Cartagena possessed a weapon or had access to a weapon in his vehicle.

- 10 -

*Id.* at 302.[7]  In addition, the Court recognized that "[i]t is the rare person who is not agitated to some extent when stopped by police, even if the driver is a law-abiding citizen who simply failed to notice or repair a broken taillight or was unaware that he or she was driving above the speed limit."  *Id.* at 305.

Coleman relies on *Cartagena* to argue that, similarly, Officer Tilghman "did not articulate any training or experience that led him to believe that [] Coleman was armed and dangerous."  Appellant's Brief, at 15.  Moreover, he contends that the record did not indicate whether Officer Tilghman had made

_____

[7] The *Cartagena* Court also set out the particular principles that allow for the search of a vehicle for weapons:

> Our past cases indicate [] that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.  These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with" the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.  *See Terry*, 392 U.S.[] at 21[].

*Id.* at 298 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)) (footnote omitted).  However, the Court emphasized that this "does not permit police to conduct a search of a vehicle during every investigative stop."  *Id.* at 299 (citation omitted).  Rather, an officer must have reasonable suspicion that the person subject to the stop has a weapon to conduct a lawful search of the passenger compartment of a vehicle at the time of the stop.  *Id.* (citation and footnote omitted).

- 11 -

any prior arrests for illegal gun possession. *Id.* at 16. Coleman argues that the lack of development as to Officer Tilghman's experience, as well any minimal nervousness shown by Coleman during the stop, is insufficient to support a finding that Officer Tilghman had reasonable suspicion to frisk him. *Id.* at 16.

Coleman next argues that the suppression court misrepresented his movements in the car as "furtive" and asks us to reject that characterization. *Id.* at 16; *see also* Trial Court Opinion, 4/26/23, at 8. Coleman cites to *Commonwealth v. Hughes*, 555 A.2d 1264, 1271-72 (Pa. Super. 1989), *Commonwealth v. Griffin*, 116 A.3d 1139, 1143 (Pa. Super. 2015), and *Commonwealth v. Raison*, 262 A.3d 473, *5 (Pa. Super. 2021) (Table),[8] to support his argument that we are not bound by the trial court's conclusion where there is a lack of factual support or contradictory evidence in the record. *See* Appellant's Brief, at 17. Coleman points to the following exchange on cross-examination:

> [Defense Counsel]: You said you heard a loud thud?
>
> [Officer Tilghman]: Yes.
>
> [Defense Counsel]: And is it fair to say his hands were in view, right, when he was next to you? He wasn't reaching around, furtive movements?
>
> [Officer Tilghman]: I mean, I don't know what the thud was still to this day.

---

[8] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value.

[Defense Counsel]: Of course.

[Officer Tilghman]: So[,] something fell. It was next to him, on him, I didn't see it. So[,] that in itself is a furtive movement if it was on him because I didn't see it.

N.T. Suppression Hearing, 10/19/22, at 18.

Coleman argues that Officer Tilghman's testimony is clear that he did not see any movement by Coleman, or whatever caused the "thud," but heard the sound and attributed it to Coleman. *See* Appellant's Brief, at 18. Coleman describes the movement seen in the body camera footage as "slowly removing his right hand from the steering wheel and looking away from the officer[, which] are innocent movements much more consistent with an attempt to retrieve a driver's license than an attempt to hide a weapon." *Id.* Coleman contrasts this with, for example, a passenger bending forward and appearing to reach under the seat, *see Commonwealth v. Buchert*, 68 A.3d 911, 912 (Pa. Super. 2013), or a lot of movement by a passenger near the center console area of a car. *See In re O.J.*, 958 A.2d 561, 563 (Pa. Super. 2008).

Next, Coleman asserts that the fact that the neighborhood where he was stopped is known for narcotics' sales should not be a factor in the suppression analysis. Coleman relies on *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), wherein our Supreme Court "expressly disapproved of consideration of the level of crime present in a neighborhood in the suppression context." Appellant's Brief, at 20. Coleman specifically points to the *Barr* Court's positive cite to Superior Court Judge Strassburger's concurring opinion, where he stated "[p]eople who live in poor areas that are riddled with crime do not

- 13 -

have fewer constitutional rights than people who have the means to live in 'nice' neighborhoods." **Barr**, 266 A.3d at 35 (quoting **Commonwealth v. Barr**, 240 A.3d 1263, 1291 (Pa. Super. 2020), **vacated** 266 A.3d 25 (Pa. 2021) (Strassburger, J., concurring)). Coleman argues that consideration of crime statistics in the area as a factor to justify a frisk lessens the constitutional rights of people who live in high-poverty, high-crime neighborhoods.

Finally, Coleman suggests that any "thump" sound Officer Tilghman heard would at most give him reasonable suspicion that there might be a weapon in the car, justifying a search of the car but not his person. **See** Appellant's Brief, at 24. Coleman argues that a valid search requires a nexus between the area frisked and the area where an officer believes a weapon may be located. **Id.** (citing **In re O.J.**, 958 A.2d at 566). Coleman further states that Officer Tilghman did not testify as to any connection between the "thump" and Coleman's person. Rather, the testimony was that the sound appeared to emanate from the floorboard of the car. In addition, Coleman argues, Officer Tilghman did not testify, for example, that his training and experience led him to believe that the possible presence of a weapon in the car also led him to believe there was a second weapon on Coleman's person. **Id.** at 25.

We hold that the suppression court's factual findings are supported by the record and that it did not err when it denied Coleman's suppression motion. **See Eichinger**, **supra**; **Galvin**, **supra**. We do not consider each

- 14 -

articulable fact alone, but rather, we consider the totality of the circumstances. *See D.M.*, *supra*.  Here, Officer Tilghman, whom the trial court found credible, testified that he heard a loud thud from inside the car once he had initiated the traffic stop, that he considered whatever caused the sound to be a furtive movement, *see* N.T. Suppression Hearing, 10/19/22, at 17-18, and that he found Coleman to be increasingly nervous after the thud.  *Id.* at 8; *see also id.* at 12-13 (Officer Tilghman testifying that after thud "you can kind of see [Coleman's] face [] change, and [Officer Tilghman] hit [his] body camera."). Officer Tilghman also testified that the area around the address is known for narcotics' sales and that there had been a homicide within a block of the stop "like a year ago."[9]  *Id.* at 6.  Describing his own reaction to the thud, Officer Tilghman said he was "startled," *id.* at 7, "freaked [] out," *id.* at 11, that he felt threatened, *id.* at 14, and that he immediately believed the sound was from a weapon. *Id.* at 17.  Officer Tilghman explained that after hearing the thud, he asked Coleman if he had a firearm in the car "because [Coleman] had his cell phone in his hand[,]" so he knew that was not the source of the sound.  *Id.* at 7; see also id. at 14 (Officer Tilghman testifying "his cellphone

---

[9] While we agree with Coleman that the general fact that the neighborhood is known for narcotics' sales should not be the determinative factor in the suppression context, it is a consideration within the totality of the circumstances.  *See Barr*, *supra*; *see also Commonwealth v. Jackson*, 302 A.3d 737, 760 (Pa. 2023) (Donohue, J., dissenting) (noting "high-crime area" "of no moment" in *Barr*; stating "assertions of 'high-crime area' must be accompanied by a showing of relevance"); *Commonwealth v. Jefferson*, 853 A.2d, 404, 406 (Pa. Super. 2004) (combined factors of unprovoked flight and high-crime area sufficient to satisfy *Terry* standard).

was in his hand[;] . . . . I don't know what else would make that sound that's in his area and he is the only person in the car.").

Considered together, Officer Tilghman articulated sufficient facts for him to justify a search of Coleman's person for weapons for officer safety. ***See In re T.W.***, ***supra***; ***see also Commonwealth v. Wright***, 224 A.3d 114, 1109 (Pa. Super. 2019) (officer observation of reaching movement can lead to concern for officer safety); ***Commonwealth v. Scarborough***, 89 A.3d 679, 683 (Pa. Super. 2014) (***Terry*** frisk for weapons requires officer has "reasonable suspicion either that criminal activity was afoot or that appellant was armed and dangerous to them"); ***Commonwealth v. Murray***, 936 A.2d 76, 80 (Pa. Super. 2007) (sufficient for officer to conclude defendant could be armed and dangerous because of excessive movement, hour of night, and neighborhood known for narcotics).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/31/2024

- 16 -