J-S17026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRAULIO ROMAN | : | No. 2108 EDA 2023 |

Appeal from the Order Entered July 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002023-2023

BEFORE:  BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                                    **FILED JULY 19, 2024**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted the suppression motion of Appellee, Braulio Roman.  We reverse.

The suppression court set forth the relevant facts of this appeal as follows:

> On January 29, 2023, Officer Grace Oyana (Badge #5223) was on routine patrol [on] the 700 block of East Westmoreland Street in the city and county of Philadelphia. During the routine patrol, Officer Oyana and his partner, Officer Ramos, who were in full uniform and in a parked patrol car, observed [Appellee] walking down the block while in their marked patrol car.
>
> The officers were still in their patrol car when they made eye contact with [Appellee].  Once [Appellee] saw the officers, he turned around and started walking in the opposite direction.  When the officers saw [Appellee] walking away, both officers stepped out of their vehicle and walked towards [Appellee].  Officer Oyana testified that he did not

recall saying anything to [Appellee] during this time.

At some point, [Appellee] began running away from the officers for approximately two to three blocks. While [Appellee] ran, Officer Oyana testified that he saw [Appellee] grab his waist.

Officer Oyana continued to chase [Appellee] while his partner, Officer Ramos, was on the sidewalk. Officer Oyana then testified that [Appellee] crossed the street at which point his partner grabbed [Appellee] and a black firearm fell from [Appellee's] body.

(Suppression Court Opinion, filed 12/18/23, at 2) (record citation omitted).

The Commonwealth subsequently filed a criminal information charging Appellee with multiple violations of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6125. On May 18, 2023, Appellee filed an omnibus pretrial motion that included a request to suppress all physical evidence obtained as a result of his interaction with the police. Among other things, Appellee argued that the police did not possess reasonable suspicion to justify a "stop and frisk." (Omnibus Pretrial Motion, filed 5/18/23, at ¶I).

The court conducted a suppression hearing on July 31, 2023. At that time, the court received testimony from both Officer Oyana and Appellee. Significantly, Officer Oyana testified that he was on routine patrol in a high-crime neighborhood when he first observed Appellee. After receiving testimony from the witnesses and argument from counsel, the court granted Appellee's suppression motion.

Pursuant to Pa.R.A.P. 311(d), the Commonwealth timely filed a notice of appeal on August 2, 2023. On August 3, 2023, the court ordered the

Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed its Rule 1925(b) statement on August 11, 2023.

The Commonwealth now raises one issue for this Court's review:

> Did the [suppression] court err in suppressing a gun [Appellee] dropped when he fled from the police in a high-crime area?

(Commonwealth's Brief at 4).

On appeal, the Commonwealth contends that the police officers possessed reasonable suspicion to stop Appellee. The Commonwealth emphasizes that Appellee fled when the officers exited their vehicle, and the flight occurred in a high-crime area known for shootings. Under the totality of these circumstances, the Commonwealth insists that the officers legally recovered the firearm that Appellee dropped during their interaction. The Commonwealth concludes that the court erroneously granted Appellee's suppression motion. We agree.

"At a suppression hearing, 'the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.'" *Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*), *appeal denied*, ___ Pa. ___, 279 A.3d 38 (2022) (quoting *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa.Super. 2011) (*en banc*)). When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are well-settled:

[We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016) (internal citations and quotation marks omitted).

Contacts between the police and citizenry fall within three general classifications:

The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and

frisk" or a "***Terry*** stop."[1]  ***Commonwealth v. Brame***, 239 A.3d 1119

(Pa.Super. 2020), *appeal denied*, 666 Pa. 240, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution.  To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot.  Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> *    *    *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal

citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of

an investigatory detention must be answered by examining the totality of the

circumstances to determine whether there was a particularized and objective

basis for suspecting the individual stopped of criminal activity."

***Commonwealth v. Cottman***, 764 A.2d 595, 598-99 (Pa.Super. 2000)

(quoting ***Commonwealth v. Beasley***, 761 A.2d 621, 625 (Pa.Super. 2000)).

"These circumstances are to be viewed through the eyes of a trained officer,

---

[1] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

not an ordinary citizen." ***Commonwealth v. Jackson***, 907 A.2d 540, 543

(Pa.Super. 2006), *appeal denied*, 593 Pa. 754, 932 A.2d 75 (2007).

> In making this determination, we must give due weight …
> to the specific reasonable inferences [the police officer] is
> entitled to draw from the facts in light of his experience.
> Also, the totality of the circumstances test does not limit our
> inquiry to an examination of only those facts that clearly
> indicate criminal conduct. Rather, even a combination of
> innocent facts, when taken together, may warrant further
> investigation by the police officer.

***Commonwealth v. Young***, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal*

*denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citation and quotation

marks omitted).

Recently, this Court reiterated that reasonable suspicion exists where a

police officer observes a defendant's unprovoked flight in a high-crime area:

> In [***Commonwealth v.***] ***Jefferson***[, 853 A.2d 404
> (Pa.Super. 2004)], this Court addressed whether the
> observation of [the] appellant in a high crime area and [his]
> flight from police combine to establish the familiar ***Terry***
> standard of reasonable suspicion. We recognized that [in]
> ***Illinois v. Wardlow***, 528 U.S. 119, 120 S.Ct. 673, 145
> L.Ed.2d 570 (2000),
>
> > [t]he United States Supreme Court held that although
> > mere presence in a high crime area is insufficient to
> > support a ***Terry*** stop, the additional factor of
> > unprovoked flight was indeed relevant. The Court
> > ultimately concluded that the two factors in
> > combination were sufficient to satisfy the ***Terry***
> > standard of reasonable suspicion.
>
> We further observed that the Pennsylvania Constitution
> affords no additional protections:
>
> > Following [***Wardlow***], it is evident that unprovoked
> > flight in a high crime area is sufficient to create a

- 6 -

> reasonable suspicion to justify a ***Terry*** stop under the Fourth Amendment….
>
> While additional facts may negate reasonable suspicion, ***Wardlow*** requires no additional facts to establish reasonable suspicion.

***Commonwealth v. Barnes***, 296 A.3d 52, 57-58 (Pa.Super. 2023) (internal quotation marks and some citations omitted).

Instantly, Officer Oyana testified that his tour of duty brought him to the 700 block of East Westmoreland Street at approximately 12:00 p.m. on January 29, 2023. The officer described this block as "very active" and "a pretty dangerous area." (N.T. Suppression Hearing, 7/31/23, at 7, 10). Officer Oyana also indicated that police "get a lot of calls for shootings" in the neighborhood. (***Id.*** at 9). From his patrol car, Officer Oyana observed Appellee "a couple houses away. He was across the street, just a couple houses up, walking down towards" the officers. (***Id.*** at 11). Officer Oyana made eye contact with Appellee. Thereafter, "[Appellee] stopped. He turned around and started walking in the opposite direction." (***Id.*** at 12).

At that point, Officer Oyana stepped out of his patrol car and walked towards Appellee. Appellee "looks over his shoulder, sees [Officer Oyana] outside the car and then … he takes off running." (***Id.***) Officers Oyana and Ramos gave chase. Ultimately, Officer Ramos grabbed Appellee. Officer Oyana described what happened next as follows: "So, I'm watching my partner grab him and then that's when you see a black firearm drop from him[.]" (***Id.*** at 14).

Here, Officer Oyana's testimony revealed that he witnessed Appellee's unprovoked flight in a high-crime area. These facts alone created reasonable suspicion to justify a ***Terry*** stop. ***See Barnes, supra***. In granting relief to Appellee, the suppression court noted that "Officer Oyana provided no facts and/or circumstances to show that [Appellee] engaged in, or was engaging in, any criminal or suspicious activity when [Officer Oyana] and his partner saw [Appellee] walking down the sidewalk." (Suppression Court Opinion at 4). We emphasize, however, that additional facts were unnecessary where reasonable suspicion already existed due to the officer's observation of Appellee's unprovoked flight in the high-crime neighborhood. ***See Barnes, supra***. Accordingly, we reverse the order granting Appellee's suppression motion and remand the case for further proceedings consistent with this decision. ***See Korn, supra***.

Order reversed. Case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/19/2024