J-S38001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAZZMEIRE RUSSELL | : | |
| | : | |
| Appellant | : | No. 1231 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004542-2021

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 02, 2026**

Tazzmeire Russell appeals from the judgment of sentence entered following his conviction for possession of firearm with altered manufacturer's number and persons not to possess firearms.[1] He challenges the denial of his motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600 and his motion to suppress. We affirm.

On May 5, 2021, Russell was arrested and charged with firearm offenses. In October 2023, he filed a motion to dismiss pursuant to Rule 600(A).[2] During a portion of his pre-trial incarceration, Russell was in federal custody. While in federal custody he was not brought to state court for appearances in this case, including for October 2022 and January 2023 court

---

[1] 18 Pa.C.S.A. §§ 6110.2(a) and 6105(a)(1), respectively.

[2] This was the second Rule 600 motion that Russell filed. He filed an initial motion in August 2023.

appearances. When a defendant is in county custody in Philadelphia, the trial court prepares the paperwork to transport the defendant to court. Supplemental Trial Ct. Op, Nov. 27, 2024, at 2 n.2 ("Rule 600 Op.") ("In Philadelphia, court personnel are responsible for bringing defendants to court from Philadelphia County custody; the Commonwealth is not involved in this process."). However, when a state-court defendant is in federal custody, the District Attorney's Office must obtain a writ to secure his appearance. **Id.** ("When a defendant is in federal custody, however, the Commonwealth is responsible for having a writ issued to bring the defendant to court.).

At a hearing on the Rule 600 motion, an extradition specialist with the Philadelphia District Attorney's Office, Carolann Masturzo, testified that on January 9, 2023, she obtained a federal writ for Russell's appearance at a January 30 hearing, and she received confirmation from an Assistant U.S. Attorney that he could be brought to state court. N.T., Oct. 6, 2023, at 22. She further testified that the Commonwealth would not have known that Russell had been taken into federal custody because the federal officers do not notify the District Attorney's Office when they remove a defendant to federal custody. **Id.** at 23-24. Masturzo testified that she was not notified that the federal authorities did not bring Russell to court on January 30, and she did not obtain any more writs to bring Russell from federal custody to state court. **Id.** at 26-27.

The trial court concluded that the Commonwealth had exercised due diligence during some periods but not others. It found:

- The Commonwealth exercised due diligence between August 23, 2022 and January 30, 2023, as it had not been alerted that Russel was in federal custody, and when it learned it "took reasonable and timely steps to bring him to court";

- It did not act with due diligence from January 30, 2023 to April 26, 2023, as it did not explain why it was unable to locate Russell during that time;[3]

- The Commonwealth exercised due diligence between April 26, 2023 and August 18, 2023, as it was ready to proceed with trial;

- It did not act with due diligence between August 18, 2023 and October 6, 2023, because it did not present evidence as to what illness its

_____

[3] The trial court explained:

> Despite the fact that the [District Attorney's Office] had prepared a writ, Appellant was not brought to court for the January 30, 2023 waiver trial listing. On that date, this Court appointed Appellant's current attorney to replace his previous counsel, directed the Commonwealth to pass discovery to the new attorney, and listed the case for trial on May 16, 2023. Both counsel stated that they did not know Appellant's location; this Court therefore listed the matter for a status date on March 21, 2023. CP Docket Entry 1/30/23. On March 21, the parties again did not know [Russell's] location, so th[e c]ourt vacated the trial date and listed the matter for another status date on April 26, 2023. *Id.* Entry 3/21/23. The Commonwealth did not explain why it was unable to locate Appellant between January 30 and April 26, 2023. Accordingly, th[e c]ourt found that the Commonwealth had not shown due diligence during that 86-day period.

Rule 600 Op. at 4. On April 26, 2023, the docket shows "Court continuance-Both sides ready. Discovery is complete. Pretrial conference on 8/11/23 in room 904 and waiver trial on 8/18/23 in room 904. *Defendant in custody in Federal Court." CP Docket Entry at entry 81. By August 18, 2023, Russell was in county custody.

witness had on August 18 that caused the Commonwealth to not be ready for trial.[4]

Rule 600 Op. at 3-5. The court concluded that of the 884 days the case had been pending, 327 were excludable due to COVID or defense continuances, 422 days were periods during which the Commonwealth showed due diligence, and 135 days fell in periods where the Commonwealth did not show due diligence. It thus denied the motion.

In August 2023, Russell moved to suppress the gun that was the subject of the firearms charges. The court summarized the testimony from the suppression hearing as follows:

> On May 4, 2021, Officer [Brian] Canela and Sergeant [Edwin] Perez, of the Philadelphia Police Department, were operating a marked patrol vehicle conducting a routine patrol. Sergeant Perez testified that on the day of [Russell's] arrest he and Officer Canela were assigned as violence squad tactical officers. Sergeant Perez was questioned about his knowledge and familiarity of the intersection of 38th and Wallace Streets and testified that he was first assigned to the 16th District, which encompasses the intersection of 38th and Wallace Streets, in June of 2015. Based on his previous knowledge of the area, Sergeant Perez testified that 38th and Wallace is "a violent intersection [with] [n]umerous homicides, numerous shootings, gang activity, lot of arrests, lot of -- not too much narcotics sales but [a] lot of arrests." [N.T., 2/14/24, at 8].
>
> While on patrol, officers observed [Russell] standing on the corner of 38th and Wallace Streets and then turn a

---

[4] The court found that "[o]n August 18, 2023, the Commonwealth was not ready to proceed because a necessary witness was sick," and noted that the Commonwealth "did not present any evidence of the witness's illness or of what, if anything, it had done to bring the witness to court." Rule 600 Op. at 5. The court therefore found the Commonwealth did not act with due diligence from August 18 to the date of the Rule 600 hearing.

corner to travel northbound. Officers proceeded to drive down the street and turned through the intersection of 38th and Wallace Streets. When questioned about why officers initially stopped the vehicle, Sergeant Perez testified that he had numerous prior contacts with [Russell] and knew that there was an active warrant for [Russell]. Sergeant Perez testified that officers run information regarding active warrants either on "MBT["] (sic) ("Mobile Data Terminal") or we can run them inside the portal inside the district." *Id.* at 15. Sergeant Perez was shown a printout of the warrant information to which he responded [that] "[t]his is clean hit for an active warrant for Tazzmeire Russell." *Id.*

Sergeant Perez further testified that upon the patrol car rounding the corner he initially couldn't see [Russell] because [Russell] was "inside . . . a cubbyhole in [an] abandoned building on the corner." *Id.* at 8-9. Officer Canela then exited the vehicle and began approaching [Russell] who immediately turned back south, and then westbound, and was seen running on the 3800 block of Wallace Street. Sergeant Perez testified that upon Officer Canela opening the door of the patrol car [Russell] immediately began running. When questioned on cross-examination why officers hadn't "simply initiated a mere encounter, walked up to him and asked him for his ID", Sergeant Perez responded that "[w]e couldn't. He ran." *Id.* at 22.

Officer Canela pursued [Russell] on foot while Sergeant Perez reversed the patrol car to give chase as well. As the chase continued with Officer Canela on foot and Sergeant Perez in the patrol car, [Russell] eventually cut across the street and ran into the patrol car operated by Sergeant Perez. Sergeant Perez testified that when he exited the vehicle Officer Canela pointed to a firearm on the ground. Officer Canela and Sergeant Perez then took [Russell] into custody. Sergeant Perez recovered the firearm which was placed on Philadelphia Property Receipt No. 3501937. The recovered firearm was a black .45 caliber Glock Model 30S handgun with an obliterated serial number, containing 8 live rounds in the magazine and one in the chamber.

Trial Ct. Op., filed Nov. 27, 2024, at 2-4 ("Suppression Op.") (some citations omitted) (some alterations in original).[5]

In addition, Officer Perez testified that the officers "know the warrants in [thei]r district. . . . [They] knew who had a warrant." N.T., Feb. 12, 2024, at 10. He testified he checked the active warrants less than five days before the arrest, and it may "not even [have been] more than three." *Id.* at 20-21. The court denied the motion.

Russell proceeded to a stipulated bench trial. The parties stipulated that when Russell ran into the patrol car operated by Sergeant Perez, the firearm fell to the ground from Russell's waistband and was recovered. N.T., Feb. 12, 2024, at 36. The Commonwealth admitted evidence that the firearm was operable and had an obliterated serial number. *Id.* at 35.

The court found Russell guilty of possession of firearm with altered manufacturer's number and persons not to possess firearms. The court imposed concurrent sentences for an aggregate of four to eight years in prison followed by one year of probation. Russell timely appealed.

He raises the following issues:

> 1. Whether the lower court abused its discretion in denying [Russell's] Rule 600(a)(1) Motion for Dismissal, where the case is beyond the adjusted run date and the Commonwealth failed to exercise due diligence in failing to issue a writ to Federal Prison authorities for the transport of [Russell] to court for the case sub judice, after surrendering [Russell] to Federal Marshalls at [Riverside Correctional

---

[5] The Honorable Chelsea Lightsey ruled on Russell's motion to suppress and issued a Rule 1925(a) opinion addressing the issue.

Facility] where [Russell] was awaiting trial for this case, then incredibly representing to this Court that they were unaware of [Russell's] whereabouts?

2. Whether the lower court abused its discretion in denying [Russell's] Motion to Suppress Physical Evidence, where [Russell] was detained without reasonable suspicion that he had engaged in criminal activity, or articulable suspicion that he was armed and dangerous, resulting in a forced abandonment of a firearm, which violated [Russell's] right to a fair search and seizure under the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania State Constitution?

Russell's Br. at 7.

Russell first argues the court erred in denying his Rule 600 motion. He maintains the motion was filed more than six months beyond the adjusted run date, and the Commonwealth did not exercise due diligence because it "took no sincere steps to transport [Russell] from [f]ederal [p]rison to appear for trial." Russell's Br. at 15. He points to Masturzo's testimony that in January 2023, she obtained a writ for Russell's transport on January 30 from federal custody to Philadelphia County court, and that she afterward received no requests for writs and therefore did not obtain one for his April 26, 2023 court date. He states, "Notwithstanding the COVID delay, where [Russell] was arrested on May 4, 2021, where [Russell's] case did not proceed to trial until February 12, 2024, because the Commonwealth just let [Russell] sit [in federal custody] for a year, the Commonwealth in no way exercised due diligence." *Id.* at 16.

We review a trial court's decision on a Rule 600 motion for abuse of discretion. *Commonwealth v. Leaner*, 202 A.3d 749, 765-66 (Pa.Super.

2019). Our scope of review is limited to the evidence presented at the Rule 600 hearing and the court's findings of fact. **Commonwealth v. Watson**, 140 A.3d 696, 698 (Pa.Super. 2016). We "view the facts in the light most favorable to the prevailing party." **Id.** (citation omitted).

Rule 600 provides that when a criminal complaint has been filed against a defendant, the trial for that defendant must commence within 365 days. **See** Pa.R.Crim.P. 600(A)(2)(a). To determine the proper calculation of time, a court should determine the mechanical run date, decide if there is any excludable time, and then add the amount of excludable time to the mechanical run date to determine the adjusted run date. **See Commonwealth v. Wendel**, 165 A.3d 952, 956 (Pa.Super. 2017). "[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." Pa.R.Crim.P. at 600(C)(1). Delay from other causes, including time attributable to the court and delay that occurs despite the Commonwealth's exercise of due diligence, is excludable. Pa.R.Crim.P. 600(C)(1)-(2) & cmt., Computation of Time.

Determining whether the Commonwealth exercised due diligence is a fact-specific, case-by-case inquiry, that "does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **Id.** at 600, cmt. (citations omitted). Furthermore, "the Commonwealth is required to demonstrate that it acted with due diligence during a time period before that period can be deemed excludable."

- 8 -

*Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021) (emphasis omitted). "[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017).

Here, Russell was arrested on May 5, 2021, and therefore the mechanical run date was May 5, 2022. The trial court concluded that "'[a]ll periods of delay . . . except those attributable to the Commonwealth where it ha[d] not acted with due diligence,' totaled 645 days (the 327 days of excludable COVID and defense time, plus the 422 days during which the Commonwealth showed due diligence, minus the 104 days that constituted 'normal progression' of the case)." Rule 600 Op. at 9-10 (alteration in original; internal citation omitted). The court then subtracted 645 days from the date of the Rule 600 hearing, October 4, 2023, which produced the date of December 28, 2021, which the court pointed out was four months before the mechanical run date. *Id.* at 10.

Russell contends that the court erred in finding the Commonwealth acted with due diligence between August 2022 and January 2023 and April 26 and August 19, 2023, claiming the Commonwealth should have known Russell was in federal custody. He points out that hearings were continued from August 23, 2022, through August 11, 2023, because Russell had not been brought down for his trial appearances.

The trial court concluded the Commonwealth acted with due diligence from August 2022 to January 2023 because the Commonwealth did not cause Russell to be unavailable and was ready to proceed during that period:

> The Commonwealth . . . was not responsible for the fact that [Russell] was not brought from federal custody to court on October 11, 2022, October 18, 2022, or January 30, 2023. The Commonwealth showed that as of October 2022, it could not, in the exercise of ordinary care, have known that [Russell] was in federal custody.[5] Once the Commonwealth learned where [Russell] was, it exercised due diligence by preparing a writ to have him brought to court for the January 30, 2023 trial date. The fact that [Russell] was not actually brought down does not negate the Commonwealth's due diligence. **See Commonwealth v. Mines**, 797 A.2d 963, 965 (Pa. Super. 2002) ("Delays resulting despite the issuance of a bringdown and writ for the defendant's appearance are not chargeable to the Commonwealth."). . . .
>
> > [5] Even if the Commonwealth had not shown due diligence during October 2022, this would not have affected this Court's conclusion, for two reasons. First, the failure to bring [Russell] to court in October 2022 did not delay the case. The case was continued on October 11, 2022, because the court was unavailable, and was continued on October 18, 2022, because [Russell's] counsel rejected the Commonwealth's offer and demanded a waiver trial. These events would have occurred whether or not [Russell] had been brought to court. Second, as explained below, this Court has concluded that the time after October 18, 2022 was a "normal progression" of the case that counted against the Commonwealth in any event.

Rule 600 Op. at 7-8.

The court also found the Commonwealth acted with due diligence between April 26, 2023 and August 18, 2023. At a March 21 hearing, the court scheduled a status hearing for April 26, 2023 to determine Russell's location.

The court found that "[b]y April 26, 2023, the parties had determined that [Russell] was in federal custody" and that "[b]oth sides were ready for trial, so th[e c]ourt listed the case for a waiver trial on the earliest date on its calendar: August 18, 2023." Rule 600 Op. at 4.

The court did not abuse its discretion in finding the Commonwealth acted with due diligence from August 2022 through January 30, 2023. Masturzo's testimony established that federal authorities do not inform the District Attorney's Office when a prisoner is transferred to federal prison and that the Commonwealth issued a writ for the January 30 court date. In addition, based on the docket and the court's factual findings, the court did not abuse its discretion in finding the Commonwealth acted with due diligence from April 26, 2023 to August 18, 2023. April 26 was a status hearing, the Commonwealth had located Russell, and it was ready for trial. Russell's Rule 600 challenge fails.

Russell next argues the court erred in denying his motion to suppress. He argues that the officers stopped him without reasonable suspicion that criminal activity was a foot or articulable suspicion that he was armed and dangerous. He points out the officers did not observe a bulge consistent with a firearm or observe him engage in a narcotics transaction. He claims he was "merely standing on the street, minding his own business, when he was observed . . . from [the officers'] police cruiser." Russell's Br. at 18. Russell acknowledges Sergeant Perez testified that he thought Russell had an outstanding warrant, but points out that the officer did not have the warrant

on him at the time of the stop. He states that although the officers "could certainly approach [Russell] and ask for his identification so that they could run a check for warrants, apprehending him to establish a warrant, without reasonable suspicion, was an unlawful action that resulted in a forced abandonment of property, when [Russell] fled and the firearm fell out of his pocket." *Id.*

When reviewing the denial of a motion to suppress, we determine "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011) (quoting *Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa.Super. 1998)). Where the Commonwealth prevailed on the motion, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." *Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa.Super. 2022) (citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Id.* (citation omitted). Where the court's factual findings are supported by the record, we will only reverse if there is an error in the legal conclusions drawn from those factual findings. *See id.*

"The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention,

often described as a **Terry**[6] stop . . . ; and (3) a custodial detention."
**Commonwealth v. Dix**, 207 A.3d 383, 388 (Pa.Super. 2019) (quoting
**Commonwealth v. Mackey**, 177 A.3d 221, 227 (Pa.Super. 2017))
(alteration in original). "A mere encounter can be any formal or informal
interaction between an officer and a citizen. The hallmark of this interaction is
that it carries no official compulsion to stop or respond." **Id.** (citation omitted).
"A mere encounter does not need to be justified by any level of police
suspicion." **Id.** "[A]n 'investigative detention' . . . carries an official compulsion
to stop and respond," and "requires reasonable suspicion of unlawful activity."
**Id.** (citation omitted) (alteration in original).

The Commonwealth may prove that a valid warrant existed with
testimony from police officers. **See Commonwealth v. Heidelberg**, 267
A.3d 492, 501-02 (Pa.Super. 2021) (*en banc*). Further, unprovoked flight
while in a high crime area can create reasonable suspicion sufficient to support
an investigative detention. **Commonwealth v. Jefferson**, 853 A.2d 404, 406
(Pa.Super. 2004).

The trial court concluded the officers had reasonable suspicion to stop
Russell. It found "both Officer Canela and Sergeant Perez had knowledge of
an active warrant for the arrest of [Russell]," which "had been verified as
recently as three days prior and, to their knowledge, [Russell] was never
arrested and taken into custody on that warrant." Suppression Op. at 6

---

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

(quoting N.T. 2/14/24 at 21). The court further found that, based on the active arrest warrant, Officer Canela opened the door of the police car so he could approach Russell and Russell "immediately fled and Officer Canela gave chase." *Id.* at 7.

The trial court found that because there was an active arrest warrant, the police officers had reasonable suspicion to stop Russell. *Id.*; N.T. 2/12/24 at 27-28.[7] The court further found that, even without the active warrant, Russell's unprovoked flight in a high crime area created reasonable suspicion to justify a *Terry* stop. Suppression Op. at 7-8. The court pointed out that Sergeant Perez testified that he and Officer Canela observed Russell at "a violent intersection [with] [n]umerous homicides, numerous shootings, gang activity, [and a] lot of arrests. . . ." *Id.* at 7 (quoting N.T., 2/14/24, at 16) (alteration in original). The court therefore found the area to be a high-crime area. *Id.* at 8. It further found that based on Sergeant Perez's testimony and the officers' body cameras, "[Russell's] actions upon arrival of the police . . . constitute[d] unprovoked flight."[8] *Id.* The court further found there was no forced abandonment of the firearm in this case:

> [I]t is the combination of factors including [Russell's] unprovoked flight, being in a known, high crime area, and both officers' knowledge of an active warrant that is sufficient to establish reasonable suspicion. This reasonable

---

[7] The trial court further found the police had probable cause to arrest Russell based on the warrant. Suppression Op. at 7.

[8] The body camera video is not in the reproduced record, but Russell does not dispute the trial court's finding in this regard.

suspicion therefore permitted the officers to pursue [Russell], which ultimately led to the abandonment of the firearm. Thus, it cannot be said that the causative factor in the abandonment of the firearm was illegal police conduct or an unconstitutional search or seizure.

*Id.* at 10.

The record supports the trial court's factual findings, and it did not err in finding the officers had reasonable suspicion to stop and pursue Russell, and that no forced abandonment occurred. This claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/2/2026